HUGO ZAMPIERI, *ET AL.*, PLAINTIFFS-RESPONDENTS, v. TOWNSHIP OF RIVER VALE, DEFENDANT-APPELLANT.

Argued May 5, 1959—Decided June 1, 1959.

*Mr. Bruce H. Losche* argued the cause for the defendant-appellant (*Messrs. Losche & Losche,* attorneys).

*Mr. Richard G. Kroner* argued the cause for the plaintiffs-respondents (*Messrs. Freeman & Kroner,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. The plaintiffs are 15 property owners in the "C" Commercial District of the defendant, Township of River Vale. They instituted an action to set aside an amendment to the zoning ordinance which increased the front setback requirement from 40 to 60 feet from the

center line of all streets in the district. The trial court held the amendment invalid, and from the judgment entered thereon the defendant appealed to the Appellate Division. We certified the case on our own motion before it was argued in that court.

River Vale is a residential community in the northern section of Bergen County. It is partially bordered on the north by New York State. The township is about 3½ miles long from north to south and its width varies from about 1 to 1½ miles. Its population has increased from 1,600 in 1950 to about 4,700 in 1958.

The original zoning ordinance was adopted in 1944 and it was generally amended in 1954. The ordinance as then amended established the "C" Commercial District. This is the only business district in the township and is located in its southerly section. The center of this district is at the intersection of Westwood Avenue and Rivervale Road, and the district extends along these thoroughfares for about 800 feet in each direction. It has a depth of 200 feet on both sides of said roads. The total area is 18 acres divided into 45 parcels of land. There are 35 buildings in the district, six of which are commercial establishments. The others are dwellings. The plaintiffs' properties are all located on either Westwood Avenue or Rivervale Road.

Rivervale Road and Westwood Avenue are both county roads. Rivervale Road is the only north-south route which links this part of Bergen County with New York State, with the exception of Kinderkamack Road two miles to the west. Traffic on Rivervale Road has increased as a result of the growth of the township and the county, and the establishment of new industry nearby in New York State. The dedicated right of way of Rivervale Road through the business district varies from 37.12 feet to 45.62 feet. (It is fair to say that the average dedicated width is about 40 feet.) However, its paved width is only 18 to 20 feet.

The other county road, Westwood Avenue, is a main connecting route running east and west through the township

between the Boroughs of Westwood and Old Tappan. Its dedicated right of way through the business district is 80 feet in width. However, only 18 to 20 feet of the right of way is paved.

On May 2, 1957 the governing body of the township adopted an amendment to the existing zoning ordinance which increased the building setback requirement from the center line on all streets in the "C" district from 40 to 60 feet. In the district a minimum rear yard depth of 50 feet is required. The plaintiffs in this action challenge this amendment on the grounds that it is unreasonable, arbitrary and capricious, and that it deprives them of their properties without full compensation and due process of law. In answer the defendant township asserts that the amendment is a valid exercise of the police power and not confiscatory.

Five of the plaintiffs testified that the effect of the amendment was to depreciate greatly the values of their properties. In several instances it was shown that the 60-foot setback, together with the 50-foot rear yard requirement, would leave the owner wtih a space in which it would be virtually impossible to erect a building. One of the plaintiffs testified that the 60-foot setback requirement will force him to locate a planned building 20 feet further back from the street than a building which has. recently been erected on an adjacent lot, and that as a consequence his "stores will not be visible coming down Westwood Avenue." It was stipulated that the remaining plaintiffs "would have, if they had taken the witness stand, testified substantially as the other witnesses have testified, the difference being the different sizes and dimensions of the lots only. In all other respects, their reasons for objecting to this ordinance will be the same as those who have testified."

The impact of the amendatory ordinance was summarized by Gerald Dederick, a real estate expert, who testified on behalf of the plaintiffs as follows:

"[T]he operation of the new zoning ordinance sets up a situation— I mean the new setback ordinance—where we have 2 business streets, same area, at an intersection, one of which permits construction within 20 feet of the line of the street, and the other one causing a setback of approximately 40 feet from the line of the street. The operation of this 60 foot setback not only places some 15 additional properties in a non-conforming use due to the setback, but also practically confiscates the usage for business purposes of 7 properties.

\*    \*    \*    \*    \*    \*    \*    \*

[T]hat the operation or the insistence upon a 50 foot rear yard reservation, plus a 40 foot setback [from the property line on the street] reservation on Rivervale Road, practically eliminates for any purpose, particularly commercial purpose, any property that is less than 150 feet in depth."

The testimony on behalf of the defendant township showed that the intersection of Rivervale Road and Westwood Avenue is "the natural link between the northernmost and southernmost parts of the town." In addition, the intersection is used by traffic proceeding between that part of Bergen County and New York State. Fire engines must traverse the crossing in order to reach properties in the southern section of the township, and it is used by children going to and from the two elementary schools situated in the northern part of the township. A short time before the passage of the ordinance a traffic light was installed at the intersection.

It is clear that the character of this intersection was the principal factor in the township's enactment of the amendatory ordinance. Mr. Rehill, who at the time of the enactment of the amendment was the Commissioner of Public Safety and who is now the Mayor, testified as to the considerations which led the governing body to the conclusion that the setback line in the "C" district should be increased to 60 feet. He said the intersection of Westwood Avenue and Rivervale Road represented a serious hazard because of the heavy flow of vehicular and pedestrian traffic across it. Also, the buildings located on the four corners of the intersection obstructed the visibility of approaching motorists. He also said that the governing body was concerned with

the parking problem; that since the roads are county highways with an increasing amount of travel "it is obvious * * * that eventually the County will, in an attempt to improve the conditions throughout the County, will widen these streets to what they deem desirable width, which is approximately a paved road of forty feet in width. At that time, of course, we will as a Township be confronted with the problem of controlling the flow of traffic through the intersection." The control of traffic, he said, would depend to a large extent upon available parking facilities. He foresaw that there will be a severe parking problem which in turn will lead to a constant impediment to the flow of traffic through the intersection. Finally, he said, there has been a continuous increase in the township's population and a correlative growth of business within the district. It was considered that the setback increase would be more conducive to the development of an attractive shopping center which would benefit the entire township. However, Mayor Rehill conceded that "[i]f there is no change in the intersection in the next 25 years, there is nothing in our ordinance that will affect the view [of motorists]." Asked about his concern for the safety of school children at the intersection he said: "As the properties are now situate, if there is no change in the buildings as they are now located at the intersection, there would be no improvement in the safety condition as far as children are concerned due to the effect of this ordinance." He also stated: "The ordinance itself will not have anything to do with the widening of the roads. The County will have the responsibility for widening the roads. The ordinance presents a method of providing for a flow of traffic and an improvement of the visibility of the area once the roads were widened." In summary, Mayor Rehill said that the ordinance has

"presented the property owners in the commercial district with an opportunity to locate their buildings in such a manner that the erection of buildings in the area will not contribute to the hazardous condition that exists at the present time. In other words, it is not

◊

a remedy of a condition which exists now, it is a method of helping remedy a situation that would exist should there be additional building."

Richard May, Jr., a planning consultant, and Alfred B. Hobelman, the Township Engineer, concurred in the analysis of the conditions described by Mayor Rehill and in the objectives sought to be achieved by the amendatory ordinance.

The trial judge held the amendatory ordinance invalid stating that "[t]he conclusion is indisputable that the purpose [of the amendment] is to provide for the future widening of highways, or to provide for parking space off the streets, or both of those purposes, and to provide for greater safety in the use of these streets by traffic." He held that the amendment could not be sustained as a zoning regulation because it involved the taking of a portion of plaintiffs' lots and that this could only be accomplished by an exercise of the power of eminent domain under *N. J. S. A.* 40:55–22 to 29. Each of the parties urges the same grounds before us as was advanced by them respectively in the trial court.

In the disposition of this appeal it is unnecessary for us to decide whether the township could achieve its desired objectives by the use of its zoning power or whether it was required to establish building lines under *N. J. S. A.* 40:55–22 to 29 and pay compensation therefor. Compare *N. J. S. A.* 40:55–22 to 29 with *N. J. S. A.* 40:55–30, 32; see *Slack v. Building Inspector of Town of Wellesley,* 262 *Mass.* 404, 160 *N. E.* 285 (*Sup. Jud. Ct.* 1928). See also *Gorieb v. Fox,* 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228 (1927); *Fischer v. Township of Bedminster,* 11 *N. J.* 194 (1952); *James v. Board of Adjustment of Town of Montclair,* 40 *N. J. Super.* 206 (*Law Div.* 1956). Assuming that zoning in the exercise of the police power may be utilized to achieve the ends sought by the township, we find the amendatory ordinance to be unreasonable and arbitrary in its effect on the properties within the district. We are not unmindful that where the power exists there is a

presumption that it has been exercised in a reasonable manner and that the burden of proof is on the moving party to prove otherwise. *Kozesnik v. Montgomery Twp.*, 24 *N. J.* 154, 167 (1957). While the community has a broad power to achieve the purposes sought by zoning, the statutory requirement of a "comprehensive plan" is intended to avoid an arbitrary, unreasonable or capricious exercise of such power. *Speakman v. Mayor and Council of North Plainfield*, 8 *N. J.* 250, 256 (1951). The reasonableness of a zoning ordinance must be tested in the setting or physical characteristics of the area in which it is sought to be enforced. *Duffcon Concrete Products v. Borough of Cresskill*, 1 *N. J.* 509, 9 *A. L. R.* 2d 678 (1949); *Scarborough Apartments, Inc. v. City of Englewood*, 9 *N. J.* 182, 186 (1952); *Fanale v. Borough of Hasbrouck Heights*, 26 *N. J.* 320 (1958). In order to determine whether or not the amendatory ordinance here under review is reasonable we must look to the existing structures and their relationship to Westwood Avenue and Rivervale Road, and particularly to the intersection of those two streets.

As stated above there are six commercial establishments now within the "C" zone. These are all located either at or near to the intersection. On the southwest corner of the intersection is a grocery and liquor store, which is set back from the center line of Westwood Avenue a distance of 43.9 feet and from the center line of Rivervale Road 20.4 feet. On the northwest corner is a gasoline service station, the building of which is located 43.9 feet from the center line of Westwood Avenue and 40.9 feet from the center line of Rivervale Road. On the northeast corner is a dwelling which is located 50.4 feet from the center line of Westwood Avenue and 27.8 feet from the center line of Rivervale Road.

On the southeast corner there is a professional building and shopping center, which was erected in 1957. It is a two-story brick structure with seven shops on the ground floor and offices above. The front of the building faces Rivervale Road and is set back 60 feet from the center line.

The side facing Westwood Avenue is set back 40.3 feet from the center line of that street. Immediately south of the professional building and shopping center on Rivervale Road is a large supermarket, which is also a brick building and appears to have been completed in 1957. It is set back 48.2 feet from the center line of Rivervale Road. The other commercial establishments are a real estate office and a dry cleaning store, both located on Westwood Avenue. The latter is within 60 feet of the center line of that street.

Six of the buildings described above would be nonconforming under the new setback requirement. In addition, there are nine other structures, all residences, located less than 60 feet from the center line of the street on which they front. This makes a total of 15 out of the existing 35 structures which do not conform to the new requirement. As above noted the total number of lots in the district is 45.

In *Bogert v. Washington Twp.,* 25 *N. J.* 57 (1957), the ordinance under attack upgraded a certain section of the municipality from one-half to one-acre lots in addition to increasing the minimum frontage requirement. Both the Appellate Division and this court sustained the ordinance. In the Appellate Division, Judge Francis dissented stating:

"Obviously, if a section of a municipality has been so built up on half-acre lots as to establish its character, a change of zone which would cause many nonconforming uses to spring into being immediately would undoubtedly be invalid." 45 *N. J. Super.* 13, 27.

Although on the appeal to this court the majority differed with Judge Francis on the ultimate disposition of the case, the above principle was recognized in its opinion:

"The present existing uses of property are a relevant factor to be considered when drawing a district. It may be poor zoning to create a district with a large number of non-conforming uses. A substantial amount of non-conformance will make the district less attractive to those who wish to come in with a conforming use and will probably create an increasing demand for variances and exceptions, and possibly destroy uniformity which is the ultimate end of zoning." 25 *N. J.* at *page* 63.

More significant than the number of nonconforming uses in the present case is the crucial location of several of these structures at the intersection of Westwood Avenue and Rivervale Road, which is the hub of the "C" Commercial District. Not only is this intersection the business center of the township but its present and potential character is primarily the cause for concern sought to be remedied and avoided by the amendatory ordinance. With the structures at and near the intersection located in their present position we believe it is unreasonable to require any property owner in the district to construct any new building at a greater setback. In *Hedgcock v. People ex rel. Reed,* 91 *Colo.* 155, 13 *P. 2d* 264 (*Sup. Ct.* 1932), an ordinance required a 15-foot setback from the curb line. The ordinance had not been enforced and consequently many of the buildings in the area had been located much closer to that line. Plaintiff Reed sought a permit to erect his building less than 15 feet from the curb. The Supreme Court of Colorado reversed the denial of the permit stating:

" 'The power [to zone] must not be exercised so arbitrarily or unreasonably as to make the ordinance unconstitutional in its operation and effect.' If this wise and reasonable reservation is to be given consideration, the record here presents fair opportunity, for, with all the adjoining corners and neighboring properties enjoying that which the chief building inspector would deny to Reed, the latter's appeal to a court of justice ought not to be in vain."

The unreasonableness of a setback which would place one property owner's building farther from the street than his neighbor's was noted by the court in *Harris v. State ex rel. Bull,* 23 *Ohio App.* 33, 155 *N. E.* 166 (*App. Ct.* 1926). In that case the setback was established by taking the average distance from the street of the buildings in any block at the time of the passage of the ordinance. This method was challenged on the ground that it was not uniform throughout the town. The court not only found this method reasonable but noted its necessity under the circumstances. It stated:

"* * * In the next block it is 22 feet, and so it varies àll over the city of Warren, fixed with reference to the buildings already erected. Had it not been so the person who might erect a new building and attempt to conform to a definite and fixed setback line, would perhaps have found himself in a pocket between two buildings which had been formerly constructed. And if such had been the provisions of this ordinance there is little doubt that its terms would have been held to be unreasonable, and an unjust and an unwarranted interference with property rights." 155 *N. E.* at *page* 168.

The keynote of sound zoning is uniformity where possible. *Bogert v. Washington Twp., supra.* The statement in *Ingannamort v. Borough of Fair Lawn,* 133 *N. J. L.* 194 (*Sup. Ct.* 1945) is appropriate:

"Manifestly, the prosecutors' properties are in an area much more devoted to business than to residence use. The municipality cannot lift them out of a natural use merely because its expert thinks it would be better so to do. It has no power to close its eyes to the existing use and say it would be better otherwise."

Though the decision of the court in *Ingannamort* had reference to use restrictions, it is clear that uniformity in the application of setback provisions is at least as essential.

In the present case the physical condition of the "C" district is such that it can fairly be said that the nonconforming corner structures have set the pattern for the district. Our examination of the testimony and the photographs in evidence convinces us that these buildings cannot be expected to be abandoned or altered in the reasonably foreseeable future. This is especially true with reference to the modern professional building and shopping center and the super market, both of which were constructed a short time before the passage of the amendment. The physical structure of the grocery and liquor store appears to be in such condition as not to require substantial repairs or changes in the near future. The gasoline service station has a modern building and is doing a "very good business." As long as these buildings remain in their present location at the intersection their nonconformance will prevent the effect sought to be achieved by the amendatory ordinance.

As Mayor Rehill conceded, if the character of this intersection does not change, this amendment will not alter such hazardous conditions as may exist at the intersection. Meanwhile, adjoining property owners who have not contributed to the situation and who are not in a position to locate their buildings in a manner which will in any way remedy it will be forced to comply with the greater setback requirement. We believe that this ordinance is an arbitrary and unreasonable restriction on the use of property within the district.

We are also cognizant of the fact that as to several property owners the combined effect of the new setback and the 50-foot rear yard requirement is to deprive them of any reasonable use of their property. While the variance procedure is the normal manner to remedy these individual hardship cases it should be noted that any variance granted would be limited to an easing of the rear yard requirement, for to vary the front setback provision would destroy the uniformity needed for the successful operation of the township's plan. *Cf. Home Builders Ass'n of Northern New Jersey v. Paramus Borough*, 7 *N. J.* 335 (1951). This would still leave these owners as well as others in the district in a position where they would be forced to build in many cases farther back from the road than existing nonconforming structures. The detrimental effect on property in a business district of being placed "in a pocket" or hidden behind an adjacent building is obvious.

We recognize that under the modern view sound planning and zoning may call for a reasonable setback requirement in a business district, and we do not imply that many proper purposes of zoning are not served by such a requirement. See *Rhyne, Municipal Law*, 844 (1957); *Town of Islip v. F. E. Summers Coal & Lumber Co.*, 257 *N. Y.* 167, 177 *N. E.* 409 (*Ct. App.* 1931). We merely hold that the ordinance as applied to the factual conditions of the present case has produced an arbitrary and oppressive result and therefore should not be sustained.

As we have concluded that the amendatory ordinance was not reasonably related to the correction of the traffic hazard at the intersection, it is unnecessary for us to consider the propriety of the trial court's exclusion of the testimony of the chief of police of the township as to the number of persons using the intersection. Nor do we believe there was prejudicial error in the court's refusal to permit Mr. May, the zoning expert, to testify to the effect of the restriction generally on property values. There was no offer of proof as to his expert knowledge of property values. The qualification of an expert is a matter within the discretion of the trial court. *Rempfer v. Deerfield Packing Corp.*, 4 *N. J.* 135, 141 (1950).

The judgment of the Law Division is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO —7.

*For reversal*—None.