ARTHUR ODABASH AND WILLIAM M. GREER AND GERTRUDE L. GREER, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. MAYOR AND COUNCIL OF THE BOROUGH OF DUMONT, DEFENDANT-APPELLANT.

Argued January 21, 1974—Decided May 9, 1974.

Mr. *Robert J. Pinard* argued the cause for defendant-appellant (*Messrs. Calissi, Klinger, Cuccio & Baldino,* attorneys; *Mr. Pinard,* on the brief).

Mr. *Elliot W. Urdang* argued the cause for plaintiffs-respondents (*Messrs. Dorfman & Urdang,* attorneys; *Mr. Urdang,* of counsel and on the brief).

The opinion of the Court was delivered by

HALL, J. Stripped of non-vital procedural complications, this zoning case boils down to the rather narrow question of the validity, as applied to plaintiffs' property,[1] of amendments of a municipal zoning ordinance prohibiting thereafter throughout the town the erection of previously allowed garden apartments and other multiple family dwellings for more than two families. The property in question had been zoned prior to the amendatory legislation to permit garden apartments and now constitutes practically an island in the midst of multi-family and commercial uses. Resolution of the question depends primarily on the particular physical facts.

The locale is Dumont, Bergen County, a borough approaching 20,000 in population with an area of only 1.82 square miles. It is almost completely built up as a residential

[1]Plaintiffs Greer are the owners and contract vendors; plaintiff Odabash is the contract vendee and has been the active party in all the proceedings. They will be referred to collectively as plaintiffs.

community, resulting in a high population density; most of the residents live in one-family houses. Industrial uses are miniscule; business uses are limited to retail establishments and offices serving the needs of the local citizenry situated in a few well defined commercial districts.

Early zoning enactments confined residential uses to one and two family houses (Residence "A" zones). In 1952 the ordinance was amended to allow garden apartments (some such structures appear to have been erected before the amendment) in what were designated as Residence "B" zones, which also permitted one and two family dwellings and professional offices if the professional person resided on the premises (likewise allowed in Residence A districts). The residence B zones, commonly referred to as the garden apartment districts, were located principally in 100 foot deep strips on main intermunicipal streets running along or near the southerly and westerly boundaries of the borough. Actually these zones extended inward to the rear property line of the particular lot by virtue of another provision of the ordinance which specifies that where the boundary line of a district runs through any lot, the regulation and restriction of the less restricted district shall automatically apply to the entire area of the lot. (Compare a different type of zone extension provision referred to in *AMG Associates v. Township of Springfield,* 65 *N. J.* 101, *p.* 114, *n.* 5 decided this day.) The result was a considerable extension in many instances, including plaintiffs' property, of the garden apartment zone into interior one family dwelling areas, as to which the owners of such dwellings were on notice. Between 1952 and 1969 a substantial number of garden apartment complexes were built so that now they represent 18% of the total number of housing units in the borough.

In November 1969 the first of the two amendments involved was adopted, prohibiting, as we have said, future construction of all multiple family housing for more than two families in any zone. It is clear, as both lower courts here found, that the measure was intended as a temporary mora-

torium pending the adoption of a master plan then in preparation. (We understand that no such plan has since been adopted.) The reason for this amendment was continued pressure for additional apartment housing in the light of the already high population density which had resulted in traffic congestion on inadequate main thoroughfares and in detrimental effect on the efficiency of old sanitary sewers and of the surface water drainage system. In other words, the municipality said it had had enough apartments, within the holding of *Fanale v. Hasbrouck Heights*, 26 *N. J.* 320 (1958). Plaintiffs do not seriously challenge the validity in general of this municipal decision, so we are not called upon to further consider *Fanale*.

Knickerbocker Road, a heavily traveled street, forms the easterly boundary of Dumont with Cresskill and Demarest. In Dumont, the road runs for seven blocks from Madison to Massachusetts Avenues, comprising a distance of about 4,500 feet. It was, prior to 1969, zoned Residence B, plus two small business zones, for its entire length except for the long block between Hamilton and Grant Avenues and two widely separated single lots zoned Residence A.

Plaintiffs' property lies in the northerly third of this Knickerbocker Road frontage in the middle of the block between Delong and Larch Avenues. It is about 160 feet wide by approximately 340 feet deep, irregular, slightly over an acre in area, and occupied by an old, very large house and outbuildings resided in by the Greers and another family. (The Greers find it necessary to dispose of the property for reasons of age and health after owning it for over 50 years.) As for the 17 year old pre-amendment zoning of this section of Knickerbocker Road, going north there is a single lot business zone next to plaintiffs on the Delong Avenue corner occupied by a delicatessen followed by garden apartment zoning and use from Delong Avenue to Massachusetts Avenue (the northerly Dumont boundary) except for a single lot Residence A zone at the latter corner occupied by a one family dwelling and professional office.

Going south, adjoining plaintiffs on the Larch Avenue corner, where the land was zoned for apartments like plaintiffs' lot, are a pair of two family duplexes, fronting on that avenue and constructed with the appearance of garden apartments.[2] Across Larch Avenue south to Lexington Avenue, the land was zoned for garden apartment use and is occupied as such, plus one professional office.[3] Some of these garden apartment tracts extend deeper into the one family residential area behind than does plaintiffs' lot. The total effect of these present uses along the northerly third of Knickerbocker Road is that plaintiffs' dwelling property is an island sandwiched between apartment and business uses which extend for about 1,000 feet both north and south.

Plaintiffs first applied to the Board of Adjustment for a variance under *N. J. S. A.* 40:55–39(d) to use the property for 36 units of garden apartments, 28 having one bedroom and 8 having two, and required off-street parking. See *AMG Associates v. Township of Springfield, supra,* 65 *N. J. p.* 109, *n.* 3. The Board recommended the variance, limited to all one bedroom apartments (which plaintiffs had agreed to at the hearing and as to which they still expressed satisfaction at oral argument before us). It said nothing about plaintiffs' hardship contention if the premises were confined to single family dwelling use. Rather the recommendation was rested upon the reasons, improper in the instant context, projected by plaintiffs, that the requested garden apartments would produce greater tax revenues and fewer school children than the four one family homes which might theoretically be constructed upon the property. The governing body refused to approve the recommendation, finding, in sum, that the special reasons relied upon by the Board were

---

[2]A prior ordinance amendment, adopted in 1957, prohibited duplex dwellings thereafter in all districts. The two structures just referred to have therefore been nonconforming uses for more than 15 years.

[3]Between Lexington and Grant Avenues, the frontage was zoned for apartments, but remains occupied by one family residences.

inadequate and that the evidence before the Board was not sufficient to warrant the requested variance under the requirements of the statutory section.

Plaintiffs then instituted the instant action in lieu of prerogative writ in the Law Division, seeking alternatively, reversal of the governing body's denial of the variance and a declaratory judgment that the zoning ordinance amendment was unconstitutional generally (based on its temporary moratorium nature) and as applied to their property (based on claimed arbitrary and unreasonable deprivation of use of the property).[4] The trial court found the 1969 amendment was a temporary measure, but did not nullify it on that ground. Rather it held the enactment was valid, generally, under *Fanale*. It went on to specifically find that the amendment is invalid as confiscatory as applied to plaintiffs' property because the area is so studded with garden apartments and commercial property that intervening lands cannot reasonably be used for another purpose. Instead of concluding the case with such a declaration, the judge decided that the governing body was in error in denying the variance and entered a judgment of reversal and remand to that body, directing the granting of the variance in accordance with the recommendation of the Board of Adjustment.[5]

---

[4] Both parties moved for summary judgment, although the case actually proceeded as a non-jury plenary trial. Summary judgment is generally inappropriate as to either cause of action in this type of case. Review of the local agency action on the variance is on the record made at the municipal level. The constitutional issue is determined either on the municipal record, if no further evidence is offered, or on such additional evidence, or both. Here both parties introduced expert testimony on this issue before the trial judge, which was much more extensive and pertinent than that presented by plaintiffs before the Board of Adjustment, and he decided the question thereon.

[5] The judge apparently adopted this course of action in the belief that otherwise he could not impose the one bedroom limitation agreed to by plaintiffs and prescribed by the Board of Adjustment. This was an erroneous belief in the circumstances. See *A M G Associates v. Township of Springfield, supra,* 65 *N. J.* p. 109, n. 3.

The municipality appealed to the Appellate Division. That tribunal held, in an unreported opinion, that the 1969 amendment was a temporary holding measure, the viability of which had expired by the passage of some three and a half years without further municipal action. It went on to decide that, even if the amendment had been adopted as a permanent measure, the evidence in the trial court established that the enactment would be unconstitutional as arbitrary and unreasonable as applied to plaintiffs' premises, leaving them as an isolated island in the midst of apartment and business uses — characterized as "reverse spot zoning." But it further concluded that the trial court was wrong in deciding that the governing body should have granted the variance and in ordering that to be done. This was on the quite proper basis, as we have indicated, that the special reasons found by the Board of Adjustment did not justify the grant of the variance. Consequently the judgment of the Law Division was set aside and the cause remanded for the entry of a judgment consistent with the opinion. However, it stayed the operative effect of such a judgment for three months so that the municipality "may have an opportunity to adopt whatever permanent amendment or supplement to its zoning ordinance as may be deemed proper and appropriate in the light of current conditions and its anticipated needs for the reasonably foreseeable future." Apparently the thought was that the municipality might be able to devise some form of amendatory legislation accomplishing its desire to stop further garden apartment construction which would not be unconstitutional as to plaintiffs' property.

The directed judgment, invalidating the 1969 amendment and declaring it unconstitutional as applied to plaintiffs' premises, was entered promptly in the Law Division and the municipality petitioned for certification, which we granted. 64 *N. J.* 153 (1973). While the petition was pending, and without our knowledge until after it was granted, the municipality, in October 1973, adopted a new amendment, identical with the 1969 enactment except for a recital of the reasons

for it to which we earlier adverted, but intended as a permanent measure. A motion to supplement the record and file additional briefs was subsequently made and granted, on the long established thesis that the status of legislation at the time of decision is controlling.[6]

We therefore have the 1973 amendment before us and must decide the case with relation to it. Moreover, we should finally dispose of this protracted matter. We are empowered, of course, to exercise such original jurisdiction as is necessary to the complete determination of any matter on review. Const. 1947, Art. VI, § 5, par. 3; R. 2:10–5. Such exercise poses no difficulty here, since the 1973 amendment is identical with that adopted in 1969. The question is the same and the proofs and findings below are equally applicable to the 1973 amendment.

The trial court and the Appellate Division each found that the prohibition against further garden apartments is unconstitutional as applied to plaintiffs' property because the immediate area is so studded with apartment and business uses, leaving it as an isolated island, that it could not reasonably be used for single family dwelling purposes and to so require would be arbitrary. There was sufficient credible evidence present in the record to support this finding in the trial court and the Appellate Division cannot be said to have been wrong in confirming it. We should not disturb such a conclusion in a non-jury case, *State v. Johnson*, 42 *N. J.* 146, 158–163 (1964), unless it be founded on an improper legal premise. We are satisfied that it was properly based.

It was early established in the zoning law of this state that when an ordinance amendment changes use

---

[6]It was disclosed at oral argument that the 1973 amendment had not been submitted to the Planning Board for consideration and report prior to adoption by the governing body as required by *N. J. S. A.* 40:55–35. Counsel for the municipality indicated that this error would be corrected. We have not been advised whether that has been accomplished. We assume, however, for purposes of decision that it has been or will be and will consider the amendment as procedurally valid.

restrictions applicable to an area, and there had been a predominant utilization of the immediate area for the formerly permitted and now prohibited use, the amendment may well be invalid, as arbitrary and unreasonable, as applied to parcels which had not previously been so used. The especially relevant thesis running through our cases in this field of the law is that the test of invalidity is not necessarily the complete unusability of the property involved for the now permitted uses, but rather whether, in view of the extent of the now prohibited uses in the close vicinity of the parcel, its value will be substantially depreciated and its marketability greated impaired if the prohibited uses are not allowed.[7] The answer must depend upon the peculiar facts in each case. *Phillips v. Teaneck Township,* 120 *N. J. L.* 45 (Sup. Ct. 1938), *aff'd,* 122 *N. J. L.* 485 (E. & A. 1939); *Vine v. Zabriskie,* 122 *N. J. L.* 4 (Sup. Ct. 1939); *Ingannamort v. Borough of Fair Lawn,* 133 *N. J. L.* 194 (Sup. Ct. 1945); *Ridgefield Terrace Realty Co. v. Borough of Ridgefield,* 136 *N. J. L.* 311 (Sup. Ct. 1947); *Scarborough Apartments, Inc. v. City of Englewood,* 9 *N. J.* 182 (1952); *Zampieri v. River Vale Township,* 29 *N. J.* 599 (1959); *Glen Rock Realty Co. v. Board of Adjustment of Glen Rock,* 80 *N. J. Super.* 79 (App. Div. 1963). In all of these cases relief was granted on the stated thesis. Compare *Guaclides v. Borough of Englewood Cliffs,* 11 *N. J. Super.* 405 (App. Div. 1951), and *Fanale v. Hasbrouck Heights, supra* (26 *N. J.* at 327), in which the test was not successfully met. See also *Wilson v. Mountainside,* 42 *N. J.* 426, 450 (1964).

---

[7]The situation is to be distinguished from that of the split lot in *A M G Associates v. Township of Springfield, supra,* 65 *N. J. p.* 114, n. 4. There that portion of the lot in the more restricted district had never been zoned for the less restricted use and thus complete unusability for the more restricted utilization was required. The requirement there of allowing only the least detrimental use in the otherwise unusable more restricted portion of the lot has no application in the case at bar since the impact on neighboring properties is of little importance.

The lower tribunals in essence applied this test in finding arbitrariness and invalidity as to plaintiffs' property. They could properly find from the proofs that, while the lot could theoretically be utilized for the erection of four one family dwellings, they would be most difficult to market at a fair price to the owner in view of the particular immediate surroundings. The conclusion of arbitrariness and invalidity was therefore sufficiently grounded legally and factually.

Plaintiffs are therefore entitled to a judgment declaring that the 1973 ordinance amendment is invalid as applied to their property, that they may utilize it for garden apartments to the extent originally proposed (but limited to one bedroom each by reason of their agreement throughout) and that a building permit shall issue therefor (prayed for in the complaint) upon compliance with all precedent requirements of other pertinent legislation and regulations.

The judgment of the Appellate Division is thus modified and the cause remanded to the Law Division for the entry of the appropriate judgment. No costs.

*For modification .and remandment* — Chief Justice HUGHES, and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.

*For affirmance*—None.