142 N.J. Super. 1 (1976)
359 A.2d 521
PAUL NIGITO AND WILLIAM KOESTNER, PLAINTIFFS-RESPONDENTS,
v.
BOROUGH OF CLOSTER, DEFENDANT-APPELLANT, AND THE BOARD OF ADJUSTMENT OF THE BOROUGH OF CLOSTER, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 4, 1976.
Decided June 2, 1976.
*4 Before Judges MATTHEWS, LORA and MORGAN.
Mr. Anthony D. Andora argued the cause for appellant (Messrs. Andora, Palmisano & DeCottis, attorneys).
Mr. Leopold A. Monaco argued the cause for respondents (Messrs. Monaco and Oratio, attorneys).
PER CURIAM.
The trial court reversed defendant-municipality's denial of a special use variance to construct 184 garden apartment units[1] for those families possessing moderate income capabilities, and the municipality appeals. The board of adjustment's recommendation that the variance be granted was rejected by the governing body on grounds, among others, that special reasons therefor had not been shown, that the population influx attendant upon the proposed development would create traffic congestion in the surrounding areas, that local services would be overtaxed, that the subject parcel could be utilized in accordance with the current zoning ordinance, and that the proposed use would substantially impair the intent and purpose of the zoning plan.
Plaintiffs, developers, own 14.7 acres of land in Closter located in the "A" residential zone reserved, with minor exceptions, for single-family residential construction. Geographically *5 the land is situated in the southwesterly corner of the borough, bounded by Durie Avenue, Schraalenburgh Road and the tracks of the operating Penn Central Railroad West Shore Division right-of-way and is immediately adjacent on two sides to the Borough of Haworth.[2] The property is rectangular in shape, having a frontage of 920 feet on Schraalenburgh Road and 720 feet along Durie Avenue with an average depth of 640 feet, the rear property line being the railroad's right-of-way. The parcel, approximately five feet below the grade of Schraalenburgh Road, is wooded, with some low and swampy portions requiring extensive fill. Public water, sanitary sewers and utilities are presently available to service the land.
The Borough of Closter is a relatively small municipality occupying approximately 3.20 square miles of land area, and is one of 15 towns designated by the Bergen County Planning Board as the "Northern Valley," a region bounded by the Hudson River on the east, the New York-Rockland County line on the north, and on the west and south by lines generally parallel to natural boundaries. The 1970 U.S. Bureau of Census Survey reported a population of 8,604 persons who live in approximately 2,500 housing units, all but 260 of which are single-family dwellings. The 260 (or 262) units are two-family houses permitted under the borough's zoning ordinance as conversions from single-family dwellings built prior to 1940, the effective date of the ordinance. Closter is primarily residential in character and is approximately 94% developed.
The borough's zoning ordinance, adopted in 1940 and amended in 1970 and 1972 to provide for an office area, *6 makes no provision for multi-family construction.[3] Plaintiffs' challenge to the constitutional and statutory validity of the ordinance was, however, declared moot by the trial judge when he granted plaintiffs their requested section (d) variance; no ruling was therefore deemed necessary with respect to their challenge, and no cross-appeal has been taken from that action.
The trial judge, rejecting the borough's conclusions to the contrary, found a need for moderate-income housing in the Northern Valley area as a whole, and in the borough in particular, and in that need and the suitability of plaintiffs' land for moderate-income apartment construction found the special reasons necessary to justify the granting of a section (d) variance. The subject parcel was deemed to be of only marginal utility for single-family dwellings thereon, the judge noting in support of that conclusion that it had remained undeveloped since the adoption of the ordinance in 1940, that it abutted the tracks of a functioning railroad, and that it sloped to a degree making difficult normal residential development. Evidence adduced by the borough suggesting a ready market for single-family dwellings on the subject parcel was either rejected or not considered. Because of some discordant uses in the immediate area, the trial judge concluded that the proposed garden apartment complex would not be out of keeping with the character of the immediate area, and accordingly, that the *7 parcel was particularly suited to garden apartment use. No apparent consideration was given to the borough's conclusion that the requested variance failed to comply with the negative criteria set forth in N.J.S.A. 40:55-39(d), necessary prerequisites to a variance pursuant to that provision.
Although the trial judge noted the general inadequacy of the evidence specifically demonstrating a housing need for moderate-income families in this area of the Northern Valley, or in the Northern Valley as a whole, and expressly avoided taking judicial notice thereof, support for his felt conclusion that the need existed was found in the legislative declarations of a housing shortage made part of the several rent-levelling ordinances of neighboring communities, in other legislative enactments (N.J.S.A. 55:14J-2), and in statements in court opinions of recent vintage. See, e.g., Inganamort v. Fort Lee, 62 N.J. 521 (1973). We question the sufficiency of such indications of a housing crisis (as distinguished from evidence of housing needs for a particular income group in a particular geographical area) to rebut the presumed validity of the borough's action in rejecting the variance based, in part, upon an express finding that whatever need there was, if any, was being met by housing afforded in neighboring communities. The municipality's findings to that effect did find support in the record and should not have been disturbed in the absence of clear evidence that they were incorrect.
The ordinance was not invalidated for its failure to make provision for multi-family construction. Nor could it be under the factual complex of this case. Closter is a small, almost fully developed community. The subject parcel, according to the trial judge's own findings is the only remaining land appropriate to garden apartment construction. The town has grown over the years, in accordance with its zoning plan, as a community of single-family homes with services adequate for that kind of development. A disinclination to accept the sizeable population increase necessarily *8 attendant upon the erection of 186 garden apartment units cannot be regarded as arbitrary or capricious action on the part of the municipality. Nor do we find anything to the contrary in the opinion of the Supreme Court in So. Burl. Cty. NAACP v. Mt. Laurel Tp., 67 N.J. 151 (1975), decided after the trial court opinion in this matter. There the court (at 187) limited its mandate to provide "the opportunity for an appropriate variety and choice of housing for all categories of people who may desire to live there," to developing communities of sizeable land area. Closter meets neither criteria.
Given a valid zoning ordinance which completely excludes multi-family dwellings from within its borders, the borough could reasonably conclude that a variance permitting construction of that which was not provided for would substantially impair the intent and purpose of the zone plan and zoning ordinance. N.J.S.A. 40:55-39(d).[4] The mayor and council of Closter in the present case made an express finding that such would be the effect of granting plaintiffs' application. The trial judge gave little or no consideration to this finding, and his conclusion implicit in his holding that such would not be the case was, in our view unwarranted.
The initial determination as to effect of the proposed apartment development upon the zoning plan of the borough was for the borough itself. Its conclusion, amply supported by evidence in the record, should not be disturbed simply because the court took another, albeit reasonable view of the matter. A variant use is permitted only in an exceptional case where the justification therefor is clear. Grundlehner v. Dangler, 29 N.J. 256 (1959). Presumptive *9 validity attends municipal action on a variance application. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268 (1965). Local officials familiar with a community's characteristics, interests and needs have been held best equipped to evaluate the merits of a proposed variance. Ward v. Scott, 16 N.J. 16 (1954). Judicial interference with such determinations is warranted only when the challenged action is found to be arbitrary, capricious or unreasonable. Bonsall v. Mendham Tp., 116 N.J. Super. 337 (App. Div. 1971), certif. den. 59 N.J. 529 (1971). No such showing has been made in this case. Noteworthy is the footnoted observation of Justice Hall in Mount Laurel, supra at 181-182, that "it would indeed be the rare case where proper `special reasons' could be found to validly support a subsection (d) variance for such privately built housing." Nothing in the record before us suggests a "rare case." See also Jenpet Realty Co., Inc. v. Ardlin, Inc., 112 N.J. Super. 79, 85 (App. Div. 1970), certif. den. 57 N.J. 436 (1971). The borough's conclusion that special reasons have not been shown for the proposed garden apartment complex cannot be viewed as so arbitrary, capricious or unreasonable as to warrant what in substance amounts to a judicial grant of the variance in question.
Finally, we note that the relief afforded by the trial judge was fundamentally predicated upon a finding of need for moderate-income housing in the area which the proposed garden apartment complex would aid in meeting. Extensive comment was made during the course of opinion as to the rents which would be charged for the apartments and the income requirements of those who could afford such rents. The problems attendant upon insuring that such rents would not exceed the maximum for such income groups was not considered; and at oral argument on this appeal counsel for the applicants conceded that, with the passage of time, the anticipated rents referred to in the trial court hearing and which formed the basis of its opinion would, in all probability, no longer obtain. Hence, no assurance that the found need would be fulfilled is possible.
*10 Accordingly, we hold that on the record before us the presumptive validity of the municipality's action in denying the variance was not rebutted, and that the municipality's conclusions that special reasons for the variance were not shown, and the negative criteria of N.J.S.A. 40:55-39(d) not met, cannot be viewed as arbitrary or capricious.
As noted, plaintiffs' original application was for 296 units; the board of adjustment recommended that the variance be granted for 184 units. Plaintiffs expressed dissatisfaction with the reduction in density, choosing to stand on their original application before the governing body. Hence the municipal resolution rejecting the variance did not consider plaintiffs' application in terms of the reduced density recommended by the board. The trial judge, after consideration, in the interest of expedition rejected the option of remanding the matter to the governing body for a determination of the variance at the reduced level of density. We choose the same course of action. This litigation has been pending for several years; some conclusion must be reached. If plaintiffs wish to have an amended application considered at the lower density level suggested by the board, they are free to file it.
Reversed.
NOTES
[1] Plaintiffs' original application contemplated construction of 296 units. The board of adjustment, however, in recommending approval of the application, limited the number of units to 184. No cross-appeal from that limitation has been taken.
[2] A unanimous resolution passed by the Haworth Borough Council opposing the variance in question was presented during the hearings before the board of adjustment, contrary to the statement by the trial judge.
[3] Article IV  District No. 1, Residence Area A [adopted 12-19-40]

§ 113-6. Uses
In Residence Area A, no buildings or premises shall be used, and no building or part of building shall be erected, constructed or altered which shall be arranged, intended or designed to be used for any purpose other than the following uses.
A. Single, detached house used as a residence by not more than one (1) family and accessory buildings necessary thereto. There shall not be more than one (1) private garage as an accessory building.
B. Church or place of worship, including a parish house, Sunday school buildings and church schools.
[4] It was not required to reach that conclusion, particularly since § 113-47.1B of the ordinance suggests that variances in connection with multi-family dwellings would be entertained on the payment of a filing fee in the amount of $75. Hence, although apartment house construction is not included in the ordinance as a permitted use, it cannot be viewed as a forbidden one.