147 N.J. Super. 65 (1976)
370 A.2d 541
WINDMILL ESTATES, INC. AND ALBERT RUTHERFORD AND GRACE RUTHERFORD, PLAINTIFFS,
v.
ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF TOTOWA, THE BUILDING INSPECTOR OF THE BOROUGH OF TOTOWA, THE MAYOR AND COUNCIL OF THE BOROUGH OF TOTOWA, SAMUEL CHERBA, PAUL CURCIO, JOHN WHITNEY, GEORGE CIPOLLETI, VILMO DI PAOLA, ROBERT PLACE, SAL DI SALVA, DAVID CUSICK, WILLIAM DE GRAFF, FRANK RE, ARTHUR TODISCO, WASYL VONDERENKO AND JOHN MASKLEE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 17, 1976.
*66 Messrs. Donato and Donato, attorneys for plaintiffs (Mr. Frank Donato, appearing).
*67 Messrs. Irwin and Sabbath, attorneys for defendant Zoning Board of Adjustment of the Borough of Totowa (Mr. George Sabbath, appearing).
Mr. Amos C. Saunders, for defendants Mayor and Council and Building, Inspector of the Borough of Totowa, individually and in their official capacity.
SALERNO, J.S.C.
This is an action in lieu of prerogative writs brought by plaintiffs seeking to declare the zoning ordinance of the Borough of Totowa unconstitutional.
Grace and Albert Rutherford are the owners of a tract of land situated on Minisink Road in Totowa. They had contracted to sell their land to Windmill Estates, Inc. Windmill desired to develop the Rutherford property into a community of townhouses to be later sold as condominiums.
The Rutherford tract encompasses roughly ten acres of land. At the time the contract to sell was entered into, this parcel of land was zoned as an R-20 area, i.e., one-family detached dwelling units located upon a one-half acre, or 20,000 square feet. The contract to sell was subject to a condition precedent that permission first be secured permitting multi-family dwelling units.
On July 15, 1975 the board of adjustment denied an application for a variance. This court, by letter opinion of August 5, 1976, upheld the board's denial of the variance.
Plaintiffs' principal contention is that the zoning ordinance involved is unconstitutional in that it fails to provide for multi-family dwelling units. Hence, plaintiffs argue, it runs afoul of the proscriptions set down by Justice Hall in So. Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151, 187 (1975).
Defendant Totowa's argument is that the Mt. Laurel decision applies only to developing communities. Since, according to defendant, Totowa is not a developing community, it is not subject to the standards set forth in Mt. Laurel.
*68 Totowa is approximately 3.9 square miles in area. From a population of 6,000 in 1950, its population grew to 10,000 in 1960 to 11,700 in 1970.
Presently, 30% of Totowa's confines are industrial and commercial in nature, 35% has developed along residential lines, 30% is used for semi-public and public use, with only 5% of the total land area of Totowa remaining undeveloped.
The median family income in Passaic County is approximately $13,500. Totowa's residents enjoy a $15,000 average family annual income.
Totowa is abutted by Little Falls, West Paterson, Paterson, Wayne and Haledon. The borough has no multi-family dwelling units, Wayne has 1470, West Paterson has 696 and Paterson has 14,904 multi-family dwelling units.
There are four major recent subdivisions in Totowa involving residential districts. None involves multi-family developments. In at least three of the subdivisions the prices of the homes range from a minimum of $63,900 to over $100,000.
The zoning ordinance of Totowa provides for five types of residence districts. They are as follows:
R-40, single-family residences on one acre, or 40,000 square feet;
R-20A and R-20, single-family residences on one-half acre, or 20,000 square feet;
R-7, single-family residences with 7,000 square feet and
R-B, two-family residences of 10,000 square feet.
It is apparent that no provision exists in the ordinance for multi-family dwelling units.
According to Mayor Cherba, the community and town council had early on decided that units of four or more families were unnecessary. It was believed that "any concentration of residents in one area would be detrimental to the safety and well-being of our community." Totowa's council did not adopt a proposed 1959 master plan which *69 had called for the establishment of garden apartments to meet housing demands, should Totowa decide to expand its ratable base.
And expand it did. Ninety percent of Totowa's industrial plants have arrived during the past 16 years. There are 16 communities in Passaic County. Totowa encompasses 2% of the total land area in the county, and has 8% of the county's tax ratables. Between 1967 and 1974 Totowa issued 17% of the county total in building permits. In 1976 Totowa had the third lowest tax rate in Passaic County.
It is uncontroverted that Totowa has, in the words of plaintiffs' expert, Harvey Moskowitz, engaged in an aggressive development program for ratable growth. Rejecting the 1959 recommendation, Totowa expanded industrially and commercially while limiting its population growth. Since 1920 Totowa has grown an average of 52.5% per decade in population. In the last decade, 1960 to 1970, it grew only 6.3%. The growth rate is expected to average between 7.4% and 8.6% per decade to the year 2000.
The result is predictable. Originally designed as a predominantly one-family community, Totowa has managed to maintain that characteristic. No provisions were made to provide housing units to accommodate the needs and pocketbooks of the employees hired by the industries that located in Totowa.
There are 3,308 housing units in Totowa. Of these, 2,583 are single-family units, 740 are two-family units, 85 are three-family or more units. Seventy-five percent of the housing units are single-family. Ninety to ninety-five percent of the residents own their own homes.
The average selling price of an old home in Totowa is $45,000. One would need an income of at least $18,000 a year to finance the usual mortgage arrangement on such a purchase.
More importantly, testimony by one of plaintiffs' experts pointed up the fact that there are no new houses available *70 within the communities of Little Falls, Totowa, Wayne and West Paterson for under $50,000.
Using a common rule-of-thumb in the real estate trade, a buyer of a house should earn annually an amount equal to 50% of the initial mortgage outstanding. Accepting this as true, almost anyone earning under $25,000 a year is financially precluded from buying a new house in Totowa. This amounts to 80% of the residents of Passaic County. Seventy percent of the county residents are precluded from buying old homes as well.
In contradistinction, moderately priced one and two bedroom apartments would run between $250-275 a month and $325-350 a month respectively. This would necessitate annual incomes of $12-14,000 for the former and $15-16,000 for the latter.
The lack of a multi-family dwelling provision, combined with an aggressive industrial and commercial growth plan, has placed the onus of providing sufficient dwelling units upon other communities within the county. Totowa has in effect been able to avoid its responsibility to provide a share of such living space.
Unquestionably, Totowa's zoning ordinance would be unconstitutional if Totowa were found to be a developing community. Totowa has since 1959 failed to fulfill any responsibility of making realistically possible an appropriate variety and choice of housing. Mt. Laurel, supra at 174. "Certainly when a municipality zones for industry and commerce for local tax benefit purposes, it without question must zone to permit adequate housing within the means of the employees involved in such cases." Id. at 187.
The dictates of Mt. Laurel are applicable to developing communities only. Nigito v. Closter, 142 N.J. Super. 1 (App. Div. 1976); Segal Const. Co. v. Wenonah Zoning Bd. of Adj., 134 N.J. Super. 421 (App. Div. 1975).
Mt. Laurel clearly describes its intended area of application in the following terms:
*71 As already intimated, the issue here is not confined to Mount Laurel. The same question arises with respect to any number of other municipalities of sizeable land area outside the central cities and older built-up suburbs of our North and South Jersey metropolitan areas (and surrounding some of the smaller cities outside those areas as well) which, like Mount Laurel, have substantially shed rural characteristics and have undergone great population increase since World War II, or are now in the process of doing so, but still are not completely developed and remain in the path of inevitable future residential, commercial and industrial demand and growth. Most such municipalities, with but relatively insignificant variation in details, present generally comparable physical situations, courses of municipal policies, practices, enactments and results and human, governmental and legal problems arising therefrom. It is in the context of communities now of this type or which become so in the future, rather than with central cities or older built-up suburbs or areas still rural and likely to continue to be for some time yet, that we deal with question raised [67 N.J. at 160]
As stated previously, Totowa has an area of 3.9 square miles, or approximately 2,560 acres. Of this total acreage, only 5%, or 128 acres, remain undeveloped. Clearly, Totowa cannot be said to be a developing community as that term is employed in Mount Laurel.
In Nigito v. Closter, supra, the Appellate Division held that a community of 3.2 square miles in land area, of which 94% was fully developed, is not a developing community and, therefore, Mount Laurel principals were inapplicable. Cf. Segal Const. Co. v. Wenonah Zoning Board of Adj., supra. Neither Closter, Wenonah or Totowa are sprawling townships of sizeable land area, as was Mount Laurel with 22 square miles, or 14,000 acres.
The court is thus constrained from holding the Totowa ordinance, as it existed under N.J.S.A. 40:55-30 et seq., unconstitutional because of its alleged exclusionary effect as measured by Mt. Laurel standards. Therefore, plaintiffs are not entitled to judgment on that ground.
Nor is plaintiffs' contention that the ordinance is unconstitutional because its application to their property is arbitrary and unreasonable of any moment. Plaintiffs have failed to meet the test laid out in Odabash v. Dumont *72 Mayor and Council, 65 N.J. 115, 124 (1974), i.e., "whether, in view of the extent of the now prohibited uses in the close vicinity of the parcel, its value will be substantially depreciated and its marketability greated [sic] impaired if the prohibited uses are not allowed."
In any event, Odabash dealt with a situation in which plaintiff's property was located in an area both studded with and zoned for multi-family units. Subsequently, an amendment was passed by the town council which had become alarmed at the proliferation of apartment dwellings. The amendment operated against plaintiff's property which by this time was an island of undeveloped land in a sea of multi-family dwelling units. The land was practically unmarketable as a one-family unit as it was now zoned.
This factual pattern is not present in the present case. Plaintiffs are not entitled to judgment on this basis either.
These determinations do not, however, dispose of the matter before this court. In addition to the specific relief demanded by plaintiffs in their complaint, there was also a request that the court grant "such other relief as may seem proper in the circumstances." It is to this requested remedy, albeit general in nature, that the court's attention is now drawn.
On January 14, 1976 the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., was approved. It has repealed N.J.S.A. 40:55-30 et seq. (L. 1975, c. 291, § 80, eff. August 1, 1976). By February 1, 1977 municipalities which desire to have the power to zone must do so in compliance with the Act, unless of course they have demonstrated compliance with N.J.S.A. 40:55D-90 which provides for the utilization of interim zoning plans while the municipality prepares the necessary procedural changes to ultimately effectuate the new law.
A prerequisite to the adoption of a permanent zoning ordinance under the new act is the formulation and approval of a master plan (N.J.S.A. 40:55D-62). In addition, *73 N.J.S.A. 40:55D-2 lists the purposes of zoning and planning. Section (g) delineates one of those purposes:
To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens.
It would be less than candid to argue that "all New Jersey citizens" does not include those of low and moderate incomes. Concomitant with this all-inclusive language is the awareness that master plans and zoning ordinances are not adopted upon the misguided assumption that all presently existing conditions will remain static in the future.
To the contrary, these plans and ordinances are enacted not only for the benefit of those presently living in a community, but also for posterity, with an eye upon inevitable changes in the status quo in the future.
Communities constantly change. What were once monuments to modern technological and social developments too often become the archaic slum dwellings that responsible government seeks to avoid or eradicate. Governments cannot abdicate their obligation to prepare for such an occurrence.
Admittedly, this is for the most part an exercise in prognostication. Enactment of a master plan and zoning ordinance is a recognition of the obligation to plan for the future. It is an attempt to develop a community in accordance with preconceived plans. Inherent in the promulgation of a zoning ordinance is the awareness that communities and conditions within those communities will change in the future. This is even more compelling when a developed community such as Totowa seeks to adopt a zoning ordinance.
The court has stated at great length its factual findings. At the risk of being repetitious, it is pertinent to again note the following facts. Since 1959 Totowa has embarked upon an aggressive plan to attract a large number of ratables. *74 It has succeeded. It has also been successful in pursuing the express goal of maintaining the community as essentially a one-family residential area with minimum population, high industrialization and commercialism, and low tax rates.
Totowa has disregarded planning reports in which it was stated that there is a need for higher density dwelling units, particularly renter-occupied units, to fulfill its obligation to the employees working at industrial concerns in Totowa.
Its zoning ordinance is exclusionary in form and application. It is in contravention with the salutary principles outlined in Mount Laurel. As stated before, but for the requirement of the developing community concept, this court would have no problem in declaring the ordinance unconstitutional.
The Municipal Land Use Act was approved subsequent to the Mt. Laurel decision. When the Legislature enacts a codification or amendment of existing laws it is presumed to do so with knowledge of prior court decisions and the judicial construction placed thereon. Caldwell v. Rochelle Park Tp., 135 N.J. Super. 66, 74 (Law Div. 1975); Petrozzino x. Monroe Calculating Machine Co., Inc., 47 N.J. 577, 582 (1966); In re Keogh-Dwyer, 45 N.J. 117, 120 (1965). An examination of N.J.S.A. 40:55D-2 leaves no doubt that this section was drafted with the principles of the Mt. Laurel decision in mind, without, however, the limiting feature of the concept of a "developing community."
Totowa has not yet hired a planner nor has it devised a master plan, a prerequisite to the implementation of the new law. Counsel for defendants has indicated that either a new zoning ordinance will be in existence on February 1, 1977, or the borough will adopt an interim zoning ordinance pursuant to N.J.S.A. 40:55D-90.
Section 81 of the new act, L. 1975, c. 291, permits any municipality regulating development prior to the effective date of the act to continue to exercise such authority for a period of six months. However, at the expiration of this six-month period, the municipality must adopt a new zoning ordinance pursuant to the provisions of N.J.S.A. 40:55D-1 et seq.
*75 Although N.J.S.A. 40:55D-90 enables a municipality to adopt an interim zoning plan at the expiration of the six-month period, this does not grant a free license to adopt any form of ordinance desired. The permission granted to the municipalities is predicated upon the requirement that the interim plan be reasonable. Without such a limitation a municipality could theoretically adopt an interim plan which is totally exclusionary and which, upon the implementation of an extension in time, could continue for two years following the expiration of the six-month grace period embodied in § 81 of the act. It is conceivable that a rapidly developing community or an almost developed community could, within this two-year period, develop the remaining portions of undeveloped land pursuant to an ordinance which would completely frustrate the purposes of the new act as outlined in N.J.S.A. 40:55D-2.
The term "reasonable interim zoning ordinance" is not defined in the new act. It is, however, axiomatic that the meaning of a particular phrase or provision of a statute is to be determined in the context of the whole statute. Davis v. Heil, 132 N.J. Super. 283, 294 (App. Div. 1975), aff'd o.b. 68 N.J. 423 (1975). Construing "reasonable interim zoning ordinance" in the context of the whole statute results in the logical determination that a reasonable interim zoning ordinance is one which comes within the parameters of N.J.S.A. 40:55D-2.
The present zoning ordinance would be fatally deficient if enacted pursuant to the Municipal Land Use Act. Past exclusionary practices cannot shield Totowa from its obligation to meet its fair share of housing needs in the future. Cf. Urban League of New Brunswick v. Carteret Mayor & Council, 142 N.J. Super. 11 (Ch. Div. 1976). Therefore, to the extent that the present zoning ordinance is incompatible with N.J.S.A. 40:55D-2 (especially subsection (g)) for failure to provide for multi-family dwelling units or other suitable housing for, but not limited to, employees recruited to work in industries attracted to Totowa, *76 the borough is enjoined from adopting the present zoning ordinance or any substantially similar ordinance as its interim zoning ordinance pursuant to N.J.S.A. 40:55D-90.