BENJAMIN T. BURTON, PLAINTIFF-APPELLANT, v. TOWN OF MONTCLAIR, A MUNICIPAL CORPORATION, BOARD OF COMMISSIONERS OF THE TOWN OF MONTCLAIR, BOARD OF ADJUSTMENT OF THE TOWN OF MONT-CLAIR, INSPECTOR OF BUILDINGS OF THE TOWN OF MONTCLAIR, AND MONTCLAIR ACADEMY FOUNDA-TION, INC., A CORPORATION, DEFENDANTS-RESPOND-ENTS.

Argued April 1, 1963—Decided April 23, 1963.

(1)

2

Mr. *Prospero DeBona* argued the cause for plaintiff-appellant (*Mr. John Milton,* on the brief; *Messrs. Milton, Keane & DeBona,* attorneys).

Mr. *Samuel Allcorn, Jr.* argued the cause for the municipal defendants-respondents.

Mr. *Dickinson R. Debevoise* argued the cause for defendant-respondent Montclair Academy Foundation, Inc. (*Mr. Peter N. Perretti, Jr.,* on the brief; *Messrs. Riker, Danzig, Marsh & Scherer,* attorneys).

The opinion of the court was delivered

PER CURIAM. Montclair Academy Foundation, Inc., a New Jersey corporation not for pecuniary profit, conducts a private country day school for boys in grades 7 through 12, on a 5.7-acre tract of land located at the intersection of Bloomfield Avenue and Lloyd Road in Montclair, New Jersey. The Academy has been in existence at this site for 75 years and for the academic year 1961–1962 had a student body of 204 boys, 34.3% of whom were residents of Montclair. It is anticipated that if the development program contemplated by these proceedings is approved, local students will increase to 55–65% of the enrollment. The use of the tract for school purposes is a nonconforming one. It pre-existed the adoption of the first zoning ordinance of the Town. At present all but a small portion of the premises is in the R-3 zone (garden apartments); the remainder is in R-0, the one-family residence zone.

The Academy building complex consists of a main academic building, a separate gymnasium, Walden House (used to house unmarried teachers and as a luncheon facility), Miller House (occupied by the Assistant Headmaster and his family) and storage garages. All of these structures, of frame and stucco construction, were erected between 1888 and 1909. Presently they are outmoded, functionally obsolete, and in such state of deterioration that even with most extensive and uneconomic repairs, they could not be made adequate to

satisfy the needs of a modern, efficient educational plant. The physical condition of the buildings faced the Board of Trustees with the problem of replacement within a short time or abandonment of the Academy.

The Academy acquired another 5.7-acre parcel of land on the westerly side of Lloyd Road, immediately opposite its present site. The tract consists of five lots, to four of which it already has title; it has an option to purchase the fifth lot. Thus, the school has available for its purposes 11.4 acres in one piece, separated only by Lloyd Road to which it holds title to the center of the street on both easterly and westerly sides.

The Academy, being desirous of building a new, modern fireproof school and gymnasium on the new tract on the westerly side of Lloyd Road, applied to the Board of Adjustment for a variance from the R-0 zone to permit the construction. The plans submitted provided, among other things, that upon grant of the variance and completion of the new buildings, the present old structures of the school on the opposite side of the street would be demolished and the site used for athletic and playfield area.

The application for variance was made under *N. J. S. A.* 40:55–39 which provides:

"The board of adjustment shall have the power to:

\*    \*    \*    \*    \*    \*    \*    \*

d. Recommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use. Whereupon the governing body \* \* \* may, by resolution, approve or disapprove such recommendation. If such recommendation shall be approved by the governing body \* \* \* then the administrative officer in charge of granting permits shall forthwith issue a permit for such structure or use.

No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."

The Board conducted extensive hearings on the application. Much testimony, expert and lay, and a number of

exhibits were offered on behalf of the Academy. Plaintiff Burton, a nearby resident, appeared by counsel in opposition to the variance. Two other neighborhood residents offered some adverse testimony. No expert witnesses were produced in support of plaintiff's contention that the area would be affected detrimentally by the change in location of the school. Thereafter, the Board unanimously recommended grant of the variance, subject to certain conditions with respect to number of students permissible, location of the parking lot, entrance ways, set-back lines, erection of a fence along the westerly boundary, planting of evergreen hedges and vines, a prohibition against erection of spectator stands, etc. The recommendation was supported by a detailed and elaborate written finding of facts, and opinion, which need not be repeated herein. The general conclusion was that the proposed school structures shown by the plans can be erected without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance, and that the educational and cultural use to be achieved thereby is in furtherance of the welfare of the community. The Board declared also that "the application can be granted without substantially impairing the intent and purpose of the Zone plan and Zoning Ordinance of the Town of Montclair."

Shortly thereafter, the Board of Commissioners unanimously approved the variance, subject to the conditions imposed. The Academy accepted the conditions. Plaintiff thereupon instituted this prerogative writ proceeding attacking the municipal action as arbitrary and lacking in evidence to support the Adjustment Board's findings. Other legal objections were presented. The Law Division affirmed the variance grant. Plaintiff's appeal to the Appellate Division was certified on our motion before argument there.

On appellate review of the municipal action involved here, the question is whether the authorities could reasonably conclude from the evidence presented that a special reason existed for the granting of the variance sought, and whether

it could be done without any substantial detriment to the public good or substantial impairment of the zoning plan and ordinance. If such support for the property owner's application reasonably appears, approval of the variance will not be declared arbitrary or capricious. *Andrews v. Ocean Twp. Board of Adjustment*, 30 *N. J.* 245 (1959) ; *Ward v. Scott*, 11 *N. J.* 117 (1952).

A situation somewhat similar to the present one was before the court in *Black v. Montclair*, 34 *N. J.* 105 (1961). There we said:

"We consider that the findings by the local officials were legally adequate to satisfy the requirements of *N. J. S. A.* 40:55-39(d). They set forth that Lacordaire's main building, erected in 1896, is outmoded and its facilities obsolete and that there is danger in overcrowding it with the high school girls; that Lacordaire's continuous use of its premises 'for 37 years past' should not be endangered or ended by refusing it permission to modernize and expand within the limitations prescribed; and that the educational and cultural use of Lacordaire's premises is in furtherance of the welfare of the community. The foregoing met the affirmative special reason requirement of subsection (d) of *N. J. S. A.* 40:55-39." 34 *N. J.*, at *p.* 115.

Review of the record in this case satisfies us that ample evidence was introduced before the Board of Adjustment to warrant its determination that special reason existed within the contemplation of *N. J. S. A.* 40:55-39(d) to recommend the Academy's variance. The governing body approved the recommendation as an exercise of its own independent judgment. We find no warrant for interference with that determination. Nor do we find a basis for reversal in any of the other grounds urged.

Affirmed. No costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.