POP REALTY CORPORATION, PLAINTIFF, v. SPRINGFIELD BOARD OF ADJUSTMENT OF THE TOWNSHIP OF SPRINGFIELD AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF SPRINGFIELD, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided September 11, 1980.

*Max Sherman* for plaintiff (*Sherman & Sherman*, attorneys; *Jay L. Kloud* on the brief).

*Yale L. Greenspoon* for defendant Board of Adjustment.

*Thomas F. Tansey* for defendant Township Committee (*Morley, Cramer, Tansey, Haggerty & Fanning,* attorneys).

FELLER, J. S. C. (retired and temporarily assigned on recall).

This is an action in lieu of prerogative writs. This matter was heard on plaintiff's appeal to reverse the ruling of defendant Springfield Board of Adjustment in denying a variance and also to set aside the Springfield zoning ordinance as it affects plaintiff's property and also in its entirety.

Plaintiff is the owner of land situated at 355, 389 and 469 Route 22 East, Springfield, New Jersey. Plaintiff's land, which embraces approximately 84,101 square feet, is located in an area zoned I–40 or General Industrial under the Springfield zoning ordinance as amended through February 1977. Much of the area is made up of retail and commercial nonconforming uses.

Plaintiff applied to defendant on July 5, 1978 for preliminary and final site plan approval and for a use variance. Plaintiff's property is currently a nonconforming use housing retail and commercial operations. Plaintiff sought to improve the present uses and to construct and operate several new retail and commercial uses. Defendant board denied the application based upon an ordinance prohibiting shopping centers within the town and retail usages in the I–40 zone.

Plaintiff contends that the positive and negative criteria have been satisfied pursuant to *N.J.S.A.* 40:55D–70(d), which entitles it to a variance, and that the zoning ordinance as it affects his property is invalid and unconstitutional and restricts the reasonable use thereof, contrary to constitutional safeguards. Plaintiff further alleges that the ordinance is discriminatory and vague and that the ordinance is invalid in that defendant failed to adopt the land use plan element of a master plan pursuant to *N.J.S.A.* 40:55D–62.

## I

[The court here held that the action of the board of adjustment in denying a use variance was correct]

## II

[The court found plaintiff's contention that the zoning ordinance is unconstitutional and invalid as it affects his property without merit]

## III

Plaintiff contends that the zoning ordinance, dated February 1977, is invalid since the planning board failed to adopt the land use element of a master plan prior to the adoption of that ordinance by the governing body, as required by the new Land Use Act.

*N.J.S.A.* 40:55D–62 reads in part:

a. The governing body may adopt or amend a zoning ordinance relating to the nature and extent of the uses of land and of buildings and structures thereon. *Such ordinances shall be adopted after the planning board has adopted the land use plan element of a master plan and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element of the master plan or designed to effectuate such plan element.* [Emphasis supplied]

The term "shall," as used in the above statute, indicates a mandatory requirement. *N.J.S.A.* 40:55D–3. Defendants do not deny that no new or modified plan was adopted prior to the adoption of the ordinance in question.

Defendants contend that a master plan was adopted and the ordinance in question is based on the prior master plan of 1964 and that there is no requirement that the planning board adopt a new master plan. Defendants further state that plaintiff has failed to cite statutory authority or case law to support its position. There is no case law on point, under the new Land Use Law, for this appears to be a unique situation. However, the court believes there is ample statutory authority to support plaintiff's position.

*N.J.S.A.* 40:55D–62 clearly indicates that ordinances should not be adopted until after the land use element of the master plan has been adopted by the planning board.

In *Cochran v. Summit Planning Bd.*, 87 *N.J.Super.* 526 (Law Div. 1965), this court rendered its decision under the provisions of the old Land Use Law as follows:

> The master plan represents at a given time the best judgment of the planning agency as to the proper course of action to be followed. In this stage the plan for community development remains flexible and is not binding, either on government or individual. See *Webster, Urban Planning & Municipal Policy* 265 (1958). A master plan is not a straitjacket delimiting the discretion of the legislative body, but only a guide for the city, *Rhyne, Municipal Law*, sec. 32–59, p. 977 (1957); furthermore, a master plan is nothing more than the easily changed instrumentality which will show a commission from day to day the progress it has made. *Haar, Land Use Planning* 693 (1959).
>
> The mere adoption and recording of a master plan has no legal consequence. The plan is merely a declaration of policy and a disclosure of an intention which must thereafter be implemented by the adoption of various ordinances. *Horack & Nolan, Land Use Controls*, 36 (1955).
>
> In New Jersey *the fact that a master plan adopted by a planning board has no legal consequences is substantiated, not only by the absence of statutory language to that effect, but also by the necessity of a municipality's adoption of the master plan by the governing body before the plan takes effect.* See *N.J.S.A.* 40:55–1.13; *Wollen v. Fort Lee*, 27 *N.J.* 408, 424 (1958), where the court said that "the master plan is not conclusive on the governing body." Moreover, it is not mandatory for a township to create a planning board and a governing body could assume directly the duties of a planning board. *Jones v. Long Beach Tp. Zon. Bd. of Adjust.*, 32 *N.J.Super.* 397, 406 (App.Div.1954).
>
> Professor Cunningham, in his "Controls of Land Use in New Jersey," 15 *Rutg.L.Rev.* 1, 19 (1960) said:
>
> > The statute does not require that the governing body shall accept the recommendation of the planning board nor does it require a vote of more than a majority of the governing body to adopt an official map * * * which is inconsistent with the planning board's recommendation. *It would thus appear that even after the planning board has adopted a master plan, the governing body is free to ignore the recommendation of the planning board based on the master plan when the governing body adopts or amends an official map.* [Emphasis supplied]
>
> It is clear that a master plan is only a plan, and that it requires legislative implementation before its proposals have binding effect and legal consequences. If the necessary legislative implementation is taken—and, of course, such implementation must be taken according to the applicable statutes—then a zoning ordinance and not a master plan would be before the court. Until appropriate municipal legislative action is taken, however, the municipality has

> only a dormant plan which differs from proposals that may be under considera-
> tion by any municipal board or citizen of the municipality in that it is compre-
> hensive and has been reduced to printed form. Indeed, *a master plan is not even
> a statutory prerequisite to zoning action. Kozesnik v. Montgomery Tp.*, 24 *N.J.*
> 154, 165 (1957). [at 535–536] [Emphasis supplied]

It is evident that under the old Land Use Act a master plan
was not even a statutory prerequisite to zoning action. This has
been changed by the terms of *N.J.S.A.* 40:55D–62, *supra*, of the
new Land Use Act. The practice under the old law led to
zoning enactments and procedures which often reflected inade-
quate planning or no planning at all.

Furthermore, these ordinances are to be consistent with the
land use element of a master plan. Since the land use element
was adopted more than two years after the ordinance was
adopted, this procedure was not followed and the statute was
ignored. What is more, the updated land use element was first
presented at the October 1979 meeting of defendant board and
adopted at the December 1979 meeting. There was no meeting
in November, and Azeglio Pancani, Jr., chairman of the plan-
ning board, testified that he did not review any of the studies
referred to in the updated land use element. This gives the
appearance that a land use element was hastily adopted so as to
be consistent with ordinances already adopted, rather than the
other way around, as the statute requires.

*N.J.S.A.* 40:55D–90 reads:

> a. The prohibition of development in order to prepare a master plan and
> development regulations is prohibited.
>
> b. A municipality may adopt a reasonable interim zoning ordinance not
> related to the land use plan element of the municipal master plan without special
> vote as required pursuant to subsection 49a of this act, pending the adoption of a
> new or substantially revised master plan or new or substantially revised develop-
> ment regulations. Such interim zoning ordinance shall not be valid for a period
> longer than 1 year unless extended by ordinance for a period no longer than an
> additional year for good cause and upon exercise of diligence in preparation of a
> master plan, development regulations or substantial revisions thereto, as the case
> may be.

The section dealing with interim zoning makes it equally clear a
land use element of a master plan must be adopted by the
municipality. The same section also clearly implies the Legisla-

ture's desire that municipalities carefully approach the preparation of a master plan and, thus, allows interim zoning ordinances in the event such preparation takes awhile to complete. This section was in effect in 1977 when the ordinance in question was adopted. It has not been in effect since May 31, 1979, the final date set for municipalities to implement the new Land Use Act by the adoption of zoning ordinances in accordance therewith.

 Defendant urges that the ordinance in question was based on the 1964 master plan and that there was no need to readopt it. It is also contended that the 1964 master plan was reviewed prior to the adoption of the 1977 ordinance but any and all such discussions were private and informal. This would also appear to violate the purposes of the Municipal Land Use Law as stated in *N.J.S.A.* 40:55D–2.

In addition, a master plan is defined in *N.J.S.A.* 40:55D–5 as follows: " 'Master Plan' means a composite of one or more written or graphic proposals for the development of the municipality as set forth in and adopted pursuant to section 19 of this act." This section then refers to *N.J.S.A.* 40:55D–28, which concerns the preparation, contents and modification of a master plan.

 *N.J.S.A.* 40:55D–28 reads as follows:

a. The planning board may prepare and, after public hearing adopt or amend a master plan, or component parts thereof, to guide the use of lands within the municipality in a manner which protects public health and safety and promotes the general welfare.

b. The master plan shall generally comprise a report or statement and land use and development proposals, with maps, diagrams and text, presenting where appropriate, the following elements:

(1) A statement of objectives, principles, assumptions, policies and standards upon which the constituent proposals for the physical, economic and social development of the municipality are based;

(2) A land use plan element (a) taking into account the other master plan elements and natural conditions, including but not necessarily limited to topography, soil conditions, water supply, drainage, flood plain areas, marshes and woodlands, (b) showing the existing and proposed location, extent and intensity of development of land to be used in the future for varying types of residential, commercial, industrial, agricultural, recreational, educational and other public and private purposes or combination of purposes, and (c) including a statement

of the standards of population density and development intensity recommended for the municipality.

(3) A housing plan, element, including but not limited to, residential standards and proposals for the construction and improvement of housing;

(4) A circulation plan element showing the location and types of facilities for all modes of transportation required for the efficient movement of people and goods into, about, and through the municipality;

(5) A utility service plan element analyzing the need for and showing the future growth location of water supply and distribution facilities, drainage and flood control facilities, sewerage and waste treatment, solid waste disposal and provision for other related utilities;

(6) A community facilities plan element showing the location and type of educational or cultural facilities, historic sites, libraries, hospitals, fire houses, police stations and other related facilities, including their relation to the surrounding area;

(7) A recreation plan element showing a comprehensive system of areas and public sites for recreation; and

(8) A conservation plan element providing for the preservation, conservation, and utilization of natural resources, including to the extent appropriate, open space, water, forests, soil, marshes, wetlands, harbors, rivers and other waters, fisheries, wildlife and other natural resources; and

(9) Appendices or separate reports containing the technical foundation for the master plan and its constituent elements.

c. The master plan and its plan elements may be divided into subplans and subplan elements projected according to periods of time or staging sequences.

d. The master plan shall include a specific policy statement indicating the relationship of the proposed development of the municipality as developed in the master plan to (1) the master plans of contiguous municipalities, (2) the master plan of the county in which the municipality is located and (3) any comprehensive guide plan pursuant to section 15 of P.L.1961 c.47.

Thus, the master plan envisioned by the Legislature is more detailed and more comprehensive than that which had previously existed under the terms of the old Land Use Law which has been repealed. See *N.J.S.A.* 40:55–1.10, 40:55–1.11 and 40:55–1.-12.

The planning board was also aware that an updated master plan and a land use element were necessary. The planning board's counsel advised the board in 1976 of this need. The township's professional planning consultants wrote the planning board on June 24, 1976 and noted the need for an updated land use plan element to the master plan.

■ Defendant also states that the 1979 adoption of the land use element of the master plan is in conformity with the expression of the legislative will contained in *N.J.S.A.* 40:55D–89 which requires periodic re-examination of master plan. However, *N.J.S.A.* 40:55D–89 calls for periodic re-examination of the updated master plan and not the previously existing one.

■ A municipality is a creature of the State, capable of exercising only those powers granted to it by the Legislature. *Taxi's Inc. v. East Rutherford*, 149 *N.J.Super.* 294 (Law Div. 1977). In the instant case the township clearly adopted ordinances by ignoring the legislative intent as expressed in *N.J.S.A.* 40:55D–1 *et seq.* and 40:55D–62.

Harry Moskowitz, a planning consultant and licensed planner, testified that there were substantial areas of nonagreement between the master plan of 1964 and the zoning ordinance which was adopted by the municipality in 1977, and gave specific details of the areas of disagreement and substantial changes since 1964.

He said that under the provisions of the Land Use Law the zoning ordinance must be in substantial agreement with an updated and revised land use plan and that basing a zoning ordinance on a 12 or 13–year old master plan "flies both in the face of the letter and the spirit of the law." He further pointed out many substantial changes in the municipality that occurred during the period between 1964 and 1977, and that the minutes of the township committee do not reveal these changes.

Moskowitz further testified that he has been employed by communities which have disagreed with the land use plans, but any disagreement has been noted in the minutes and done with a majority vote of the full authorized membership of the governing body, as the Land Use Law provides. He said there was no mention of any disagreement in the minutes of the township committee when the ordinance was adopted.

The procedure referred to is set out in *N.J.S.A.* 40:55D–62, which provides as follows:

a. The governing body may adopt or amend a zoning ordinance relating to the nature and extent of the uses of land and of buildings and structures thereon. Such ordinance shall be adopted after the planning board has adopted the land use plan element of a master plan and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element of the master plan or designed to effectuate such plan element; *provided that the governing body may adopt a zoning ordinance or amendment or revision thereto which in whole or in part is inconsistent with or not designed to effectuate the land use plan element, but only by affirmative vote of a majority of the full authorized membership of the governing body with the reasons of the governing body for so acting recorded in its minutes when adopting such a zoning ordinance.* [Emphasis supplied]

This statute apparently was ignored, according to the testimony of Moskowitz.

■ Therefore, it is clear, under the new Land Use Act, that before a municipality may enact a new comprehensive zoning ordinance, a land use plan must have been *prepared and adopted* by the planning board as part of a municipal master plan.

If no land use portion of the municipal master plan has been adopted by the planning board by the time a municipality was required to enact a new zoning ordinance, a municipality would nonetheless be permitted to enact a temporary interim zoning ordinance before May 31, 1979.

■ Because no zoning ordinance (other than a temporary interim ordinance) can be legally adopted under the new law until after the municipal planning board has adopted the land use portion of the municipal master plan, *N.J.S.A.* 40:55D–62, municipalities should proceed with their master plan studies and hearings as expeditiously as possible. *N.J.S.A.* 40:55D–28.

■ Therefore, a municipality that has recently adopted a master plan, including a land use plan, and a comprehensive zoning ordinance reflecting the master plan proposals, and does not wish or need to initiate new master plan studies and hearings, *should at the least have the planning board review and readopt the existing master plan and thereafter* have the zoning ordinance reintroduced and re–enacted *after* submission to the planning board for review and recommendations.

Apparently compliance with the above statutory provisions seem to be jurisdictional as well as procedural.

A municipality, in exercising the zoning powers delegated to it, must act within such delegated powers and cannot go beyond them, and where a statute sets forth the procedure to be followed, no governing body or subdivision thereof can adopt any other method of procedure. *Midtown Properties, Inc. v. Madison Tp.*, 68 *N.J.Super.* 197, 307 (Law Div.1961), aff'd o. b. 78 *N.J.Super.* 471 (App.Div.1963). When a statutory power is exercised in a manner that could not have been within the contemplation of and produces a result that could not have been foreseen by the Legislature, such exercise of powers must be restrained within proper bounds by being held void. *Grogan v. DeSapio*, 11 *N.J.* 308, 322 (1953).

The presumption of regularity which attaches to municipal actions is not conclusive and may be eradicated by affirmative proof that the ordinance was not enacted in obedience to requisite formalities, *Catalano v. Pemberton Tp. Bd. of Adj.*, 60 *N.J.Super.* 82 (App.Div.1960). That case also holds that estoppel and laches were not available as a defense.

In *Mulligan v. New Brunswick*, 83 *N.J.Super.* 185 (Law Div. 1964), the court held that the ordinance was invalid where, prior to its adoption, the governing body did not submit it to existing city planning board. The court held (at 190–191) that the concept of referral to an existing planning board requirement is mandatory, and a failure to comply therewith vitiates any proposed change.

*Mulligan* was decided under the provisions of the old Land Use Law. However, the rule is applicable here because the provisions of the new Land Use Law are also mandatory. *N.J.S.A.* 40:55D–62. See 3 *Rathkopf, Laws of Zoning and Planning*, Supp. at 36–16. *See, also, Bohan v. Southampton*, 227 *N.Y.S.2d* 712 (Sup.Ct.1962).

In determining the intent of the Legislature it is necessary to consider the old law as contrasted with the new Municipal Land Use Act. When a statute alters or amends a previous law, it is important to ascertain the intention of the Legislature in considering the old law, the mischief and the proposed remedy. *De Fazio v. Haven S. & L. Ass'n*, 22 *N.J.* 511 (1956). Clearly, the intent of the statutory change was to make the adoption by a planning board of the land use element of a master plan a prerequisite to the enactment of a zoning ordinance by a governing body and to require a governing body to give reasons in writing why it ignores all or part of the terms of a master plan.

Furthermore it is a well established principle of law that it is assumed that the Legislature knows what it is doing and does not legislate a nullity. *Jones v. East Windsor Reg'l Bd. of Ed.*, 143 *N.J.Super.* 182, 191 (Law Div.1976). However, that would be the effect if the provisions of the new Land Use Act cited herein were disregarded.

Generally, the procedural steps required by statute are regarded as mandatory, and failure to abide by such requirements will invalidate a zoning ordinance. Attempts to exercise the local zoning power in contravention to procedural requirements contained in the enabling statute have been considered to be *ultra vires* or a denial of due process. *See Canton v. Bruno*, 282 *N.E.2d* 87 (Mass.Sup.Jud.Ct.1976); also, *Kelly v. Philadelphia*, 382 *Pa.* 459, 115 *A.2d* 238 (Sup.Ct.1955).

In many of the states the zoning enabling acts provide for the appointment of a zoning commission planning board or planning commission, and for receipt of a report by that board or commission before a legislative body may enact an original zoning ordinance. Such a requirement is generally considered mandatory. *See Connell v. Brunswick*, 5 *A.D.2d* 932, 172 *N.Y.S.2d* 266 (N.Y.App.Div.1958). *See, also, State ex rel. Kramer v. Schwartz*, 82 *S.W.2d* 63 (Mo.Sup.Ct.1935).

Therefore, for the reasons set out it is the opinion of this court that the ordinance under consideration is invalid.

With the exception of an appeal that may be filed, all proceedings in this litigation are hereby stayed until December 31, 1980 in order to give the township committee the opportunity to comply with the provisions of *N.J.S.A.* 40:55D–62 and 40:55D–28.