214 N.J. Super. 363 (1986)
519 A.2d 887
NEW HOPE BAPTIST CHURCH, A RELIGIOUS ORGANIZATION OF THE STATE OF NEW JERSEY, GROVER REYNOLDS, WILLIAM HALL AND SANDY WILLIAMS, PLAINTIFFS-APPELLANTS,
v.
ROY W. SOMMERHALTER; ZONING BOARD OF ADJUSTMENT OF THE CITY OF HACKENSACK, DEFENDANTS-RESPONDENTS, AND MAYOR AND COUNCIL OF THE CITY OF HACKENSACK, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 29, 1986.
Decided December 8, 1986.
*364 Before Judges FURMAN, DREIER and STERN.
Parsekian & Solomon, attorneys for the appellants (Ned J. Parsekian, on the brief).
James E. Dow, Jr., attorney for respondent Sommerhalter.
John B. Paolella, attorney for respondent Zoning Board.
The opinion of the court was delivered by FURMAN, P.J.A.D.
Defendant Sommerhalter was granted a use variance, N.J.S.A. 40:55D-70(d), for washing, waxing, preparation for sale and storage of new cars in an existing building, upon condition that he not perform auto body or heavy mechanical work, painting or spraying at the site. The proposed use would be ancillary to defendant's automobile dealership in a nearby municipality. The Law Division affirmed the use variance in this action instituted by objectors, who are nearby residents and property owners. We also affirm.
The property is a lot of almost 20,000 square feet in a one-and two-family residential zone at the corner of two intersecting streets. There are some other commercial uses in the vicinity. Other permitted uses in the zone include churches, schools, parks, playgrounds, municipal facilities and professional offices combined with dwellings.
*365 A bus garage was operated on the premises for several years as a preexisting nonconforming use. The masonry building used for the bus garage is 15 feet in height with over 6,000 square feet of floor space. The bus garage use was discontinued about nine months before defendant acquired the property and applied for the use variance.
Defendant has not advanced the argument that his proposed use would not substantially deviate from the preexisting nonconforming use and, thus, he is entitled to continue it. Nor has he contended that he is entitled to a variance for a use modifying only slightly and unintrusively the discontinued bus garage use. See North Bergen Tp. v. Thomas S. Lee Enterprises Inc., 75 N.J. Super. 17, 21-22 (App.Div. 1962); Scavone v. Totowa, 49 N.J. Super. 423, 427-428 (App.Div. 1958). The judge below did not pass on the issue of whether the preexisting nonconforming use was abandoned or merely discontinued; he noted that the Board of Adjustment also had not.
The Board of Adjustment determined that the use variance could be granted without substantial detriment to the public welfare or substantial impairment of the zoning plan. Its determination that the so-called negative criteria were met was reasonably reached on the evidence in the record, including the evidence of some commercial development nearby and defendant's representations that he would deliver cars to the site one at a time and not by truckload, that he would store no more than 30 there at one time, that he would not run them on idle creating fumes, that he would renovate the masonry building, paint it, secure it, put a fence around it and landscape the property outside.
The special reason for a use variance found by the Board of Adjustment was that the property "cannot be reasonably put to a residential use without destruction of the building in question." The judge below amplified what in our view was implicit in the Board of Adjustment findings, pointing out, on the undisputed record, that the building, while vacant, had become *366 dilapidated, an "eyesore" and a "danger;" that the property with the building standing had no market for residential housing or other permitted use because of the prohibitive cost of purchasing the building and tearing it down; and that, without a conversion to a use such as defendant proposed, the property "would remain vacant ad infinitum."
As we have said, whether there is a right to a preexisting nonconforming use for a bus garage on the premises is not in issue. The former bus garage building is there, deteriorating in appearance and increasingly a hazard to children and others. Defendant's proposed use is one compatible with the former bus garage use and no more, if not less, intrusive.
The judicial precedents supporting the result below are those upholding use variances for safe and attractive structures to replace unsafe and dilapidated structures, which otherwise would remain eyesores and dangers diminishing nearby property values, Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268 (1965) (fireproof hotel to replace dangerous structure); Kessler v. Bowker, 174 N.J. Super. 478 (App.Div. 1979) certif. den. 85 N.J. 99 (1980) (expansion of nonconforming retail appliance shop making the property safer for children by removing an attractive nuisance); Hudanich v. Avalon, 183 N.J. Super. 244 (Law Div. 1981) (seven stores on a pier to replace a structure declared unsafe).
Such use variances have been granted to expand upon or alter preexisting nonconforming uses. We do not attach decisive significance to the circumstance here that there has never been a decision whether the preexisting nonconforming bus garage use was abandoned and, thus, the right to it lost. Other factors parallel Kramer, Kessler and Hudanich, including the gain both in safety and aesthetics by renovating the existing structure and the slight and unintrusive variation from the former use to the proposed use.
An alternative special reason advanced for the use variance on appeal is that defendant's property would otherwise be zoned into economic inutility. Although stated to be so in *367 dictum in A M G Associates v. Tp. of Springfield, 65 N.J. 101, 109, n. 3 (1974), economic inutility making a property undevelopable for any permitted use under applicable zoning has not been held to be a special reason for a use variance in any reported opinion in this State. A property owner whose property is zoned into economic inutility has available remedies: attacking the constitutionality of the zoning ordinance as applied to his property or inverse condemnation. A M G Associates, supra, at 111-112; Sheerr v. Evesham Tp., 184 N.J. Super. 11, 33 (Law Div. 1982).
Here economic inutility is a consequence not of the applicable zoning but of the preexisting structure which prevents any development of the property for a permitted use. A special reason has been established for a use comparable to the former use, which would eliminate the eyesore and the danger of the preexisting structure and, thus, protect the public safety and prevent the property from remaining unoccupied and deteriorating further.
We do not bar defendant because he bought the property knowing that he would require a use variance for his new car preparation and storage enterprise. His predecessor owner would have had the same entitlement to a variance for that use. See Wilson v. Mountainside, 42 N.J. 426, 452 (1964).
We affirm.
DREIER, J.A.D., concurring.
I concur in the affirmance of the Law Division's decision to sustain the grant of the use variance. However, I would have sustained the variance on the grounds of economic hardship rather than safety and esthetics. Although safety has been cited in many cases as a basis for a variance, and is expressly authorized as a basis in N.J.S.A. 40:55D-2a, often safety as a factor is no more than a euphemism for the correcting of a dilapidated or dangerous condition that the owner has permitted to exist, in violation of a building or property maintenance code. There may, of course, be cases in which safety is a *368 legitimate factor. But where dilapidation of the property has been permitted by the owner, to call the alleviation of that condition a satisfaction of the "safety" factor envisioned by N.J.S.A. 40:55D-2a, would be to permit the owner to obtain a variance on the basis of a sham. There are insufficient facts before us to determine the responsibility for the dilapidation of the property. If this factor alone were present, I would remand for an expansion of the record. But, since there is another sound basis for sustaining the grant of the variance, there need be no such remand.
In the case before us a clear showing has been made of economic hardship upon which a variance can and should be based. I need not repeat here the supporting authorities for the grant of such a variance, since I have recently expressed my views on the subject in my concurring and dissenting opinion in Henningsen v. Randolph Tp., 214 N.J. Super. 82, 89 (App.Div. 1986). It should be sufficient for these purposes to note that the cost of demolishing the structure, added to the cost of the lot and the cost of constructing conforming structures, would price the resulting residences out of the market. For this reason economic hardship, standing alone, is a sufficient basis for the granting of the variance. I, therefore, concur in the affirmance of the decision of the Law Division.