292 N.J. Super. 118 (1996)
678 A.2d 323
PETER E. ELCO, PLAINTIFF-RESPONDENT,
v.
R.C. MAXWELL COMPANY, DEFENDANT-APPELLANT, AND CITY OF ABSECON ZONING BOARD OF ADJUSTMENT, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1996.
Decided July 15, 1996.
*121 Before Judges KING, LANDAU and KLEINER.
Jack Plackter argued the cause for appellant (Horn, Goldberg, Gorny, Daniels, Plackter & Weiss, attorneys; Nicholas F. Talvacchia, on the brief).
Salvatore Perillo argued the cause for respondent (Perillo & Rosenberger, attorneys; Mr. Perillo, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.

I.
On June 29, 1994 appellant R.C. Maxwell Company (Maxwell) applied for use variance relief under N.J.S.A. 40:55D-70d[1] and for site-plan approval to permit it to construct a billboard in the City of Absecon (City) on Route 30, the White Horse Pike. The Absecon Zoning Board of Adjustment (Board) held a hearing on Maxwell's application on September 19, 1994. The Board voted 5 to 2 in favor of granting the variance.
*122 On September 7, 1994 Absecon Mayor Peter Elco, individually and in his official capacity as mayor, filed a complaint in lieu of prerogative writ challenging the Board's grant of the use variance. Elco claimed that Maxwell had failed to demonstrate adequate special reasons to support its request for a use variance; that the Board failed to make adequate findings with respect to special reasons; and that the proposed signs would create an undesirable visual environment and contradict the purposes of the local zoning plan.
On June 14, 1995 Judge Seltzer reversed the Board's grant of the use variance. The judge ruled that the Board had based its decision to grant the variance solely on economic inutility as the special reason. He concluded that the Board did not have the authority to consider the impact of nonmunicipal or state environmental regulations, namely the 1993 amendments to the Coastal Area Facility Review Act (CAFRA II), N.J.S.A. 13:19-1 to -19, on Maxwell's ability to develop the property. The judge did not rule on the Board's finding that Maxwell had established other special reasons for the variance, namely, that the proposed use would further the zoning goal of preserving adequate air, light and open space and that the site was particularly suitable. Maxwell appeals, asking us to reverse and reinstate the Board's grant of the use variance. We decline and affirm.
Maxwell, a commercial sign company, was founded in 1894 and has owned the property involved since at least the 1950's. The proposed site for the sign was Block 171.01, Lot 14 on the City Tax Map (the property). The property is located adjacent to U.S. Route 30, the White Horse Pike, in the C-3 Marine Commercial District (District). Permitted uses in the C-3 District include marinas and other water-oriented uses. Free-standing billboards are not a permitted use within the District. The City's Developmental Ordinance states that the purpose of the Marine Commercial District is to "encourage water-oriented business development which is compatible with the predominant residential nature of Absecon's waterways...." The 1.6-acre property has a frontage *123 of 450 feet on Route 30. Its depth ranges from 100 to 260 feet to the north towards Absecon Creek. The site is currently vacant and covered with vegetation; much of it is wetlands. To the east of the property there is a gas station; to the west, the South Jersey Auto Body Shop and the Boulevard Bait Shop. To the south is a professional office occupied by NuVision Optical; to the north are Absecon Creek and adjoining wetlands. The record is unclear, but apparently there was another gas station/auto-body shop nearby, as well as a vacant building, once proposed as a diner. The proposed sign would be about 600 feet from the edge of the residential developments. There had been two 12' by 20' commercial advertising signs and a large painted display on the property until the late 1950's or mid-1960's. The poster display was used to advertise Hackney's Restaurant in Atlantic City and the two signs were used to advertise unspecified "products and services sold in Atlantic County." The signs and poster display were removed in the 1950's because of storm damage and a poor economic climate. Since then, nothing has been located on the property, even though a "tremendous amount" of traffic passes the site.
The proposed cantilevered billboard structure has two advertising faces, one to the east and the other to the west on Route 30. Each sign would be 14 feet tall by 48 feet long, an area of 672 square feet for each sign. The sign structure would be steel with a single pole. The top of the sign would be elevated thirty feet above grade and the maintenance catwalks on the bottom would be 13 feet above grade. The sign would be anchored to a concrete structure about 15' by 15'. Maxwell's general manager said the signs would require little maintenance. An electrician would check it once a week and Maxwell would paint it once or twice a month.
Maxwell advanced five arguments in support of its application for a use variance: (1) unless the variance is granted, the property will be regulated into economic inutility as not reasonably adapted to any other use, including other nonconforming uses; (2) the *124 application provides sufficient space in appropriate locations for a type of commercial use, promoting one of the purposes of zoning as set forth in the New Jersey Municipal Land Use Act (the Act), N.J.S.A. 40:55D-2; (3) the application will promote the traditional zoning purpose of providing for adequate light, air and open space because it complies with all bulk requirements of the City zoning ordinance; (4) the site is particularly well-suited for the proposed billboard use because of the existence of wetlands; this is an environmentally sensitive site and the billboards will not create any environmental problems; (5) the proposed use will not create a detriment to the public good because there is no impact on surrounding commercial uses or on the City zoning plan.
In voting to grant Maxwell the use variance, Board member Logue stated, "[e]xperts have testified tonight that the zoning, C-3 use, marine commercial development looks to be impossible because of the wetlands. Therefore I feel the applicant qualifies for a special use consideration. It's an ideal location for billboards and there is a previous history of billboards at that location. I see no harm to Absecon residents and our view of the Absecon Creek is still maintained." Also voting "yes," Board member Seher stated,
I believe the applicant has made a credible and compelling presentation. I believe there are specific reasons about economic [in]utility based on the expert testimony and I don't think there's anything detrimental. I think a 40 by 40 feet sign located between a gas station and auto repair shop is not going to impact the view from the Shores nor from the North Shore Road for the residents....
The third and fourth Board members who voted to grant the use variance, Sheeran and Strickland, expressed their essential agreement with the reasons articulated by Board member Seher. The fifth member to vote for the variance, Thomas, gave the longest explanation:
I believe it is not the applicant's fault that we put a C-3 zone where you could never build a marina under the current conditions. The city has to take the responsibility for looking at terms and conditions and doing appropriate zoning. [Maxwell] has come here with a legitimate request which enhances the use from nothing to something ... I would note that in a C-3, you could build something 35 feet high, so on a theory you could put a marina with a 35-foot high sign or rooftop or whatever. I believe this testimony tells me it's only 27 feet high, 13 feet off the *125 ground, 14 feet high. I do not see that anyone living in the Shores area is going to look over there and see that. I've been on the Shores, I've seen a lot worse than the sign that's going to be there. I believe the applicant also said ... that he would put a screen or something. I'll take your word for it that it helps mitigate any possible negative effect. I believe if you look at the photographs going down the Pike you will see ... the sign proposed is much lower than the other structures there are there. I presume coming and going west it would be approximately the same thing. You would see the gas station. I think the sign is being placed so as not to harm any business that is there, whether with lighting or blocking the view and I see no detriment at all to either. I think it enhances the master plan and therefore I vote yes.
The State regulations which Maxwell contended made the tract undevelopable without a variance, CAFRA II, had gone into effect at midnight of the day of the hearing, Tuesday, July 19, 1994.[2] The Board issued its decision and resolution granting the variance on Wednesday, July 20, 1994.

II.
A variance presupposes that the zoning regulation as a whole is reasonable, Moriarty v. Pozner, 21 N.J. 199, 121 A.2d 527 (1956), but recognizes that certain uses of property are compatible with the design of a particular zone even though the proposed use is contrary to the restrictions imposed in that zone. Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 119 A.2d 142 (1955). Accord Value Oil Co. v. Town of Irvington, 152 N.J. Super. 354, 377 A.2d 1225 (Law Div. 1977), aff'd, 164 N.J. Super. 419, 396 A.2d 1149 (App.Div. 1978), certif. denied, 79 N.J. 501, 401 A.2d 256 (1979). Cf. Kindergan v. River Edge Bd. of Adj., 137 N.J.L. 296, 59 A.2d 857 (1948) (board's power to grant variances is to grant variations from terms of ordinance consonant with ordinance's *126 spirit). A variance differs from an exception in that an exception is legislatively permitted in a zone subject to controls, whereas a variance is legislatively prohibited but may be allowed for special reasons. A zoning board's variance power is intended to accommodate individual situations which, for a statutorily-stated reason, require relief from restrictions otherwise uniformly applicable to the zone as a whole. Dover Tp. v. Dover Tp. Bd. of Adj., 158 N.J. Super. 401, 386 A.2d 421 (App.Div. 1978). Variances to allow new, nonconforming uses should be granted only sparingly and with great caution since they tend to impair sound zoning. Kohl v. Mayor and Council of Fair Lawn, 50 N.J. 268, 234 A.2d 385 (1967); Lumund v. Rutherford Bd. of Adj., 4 N.J. 577, 585, 73 A.2d 545 (1950); Committee for a Rickel Alternative v. City of Linden, 214 N.J. Super. 631, 520 A.2d 823 (App.Div. 1987), aff'd, 111 N.J. 192, 543 A.2d 943 (1988); Lazovitz v. Berkeley Hts. Bd. of Adj., 213 N.J. Super. 376, 517 A.2d 486 (App.Div. 1986); Degnan v. Monetti, 210 N.J. Super. 174, 509 A.2d 277 (App.Div. 1986). Variances are appropriate only in an exceptional case where the justification is clear. Nigito v. Borough of Closter, 142 N.J. Super. 1, 359 A.2d 521 (App.Div. 1976), certif. denied, 74 N.J. 265, 377 A.2d 670 (1977); Ring v. Mayor and Council of Rutherford, 110 N.J. Super. 441, 266 A.2d 129 (App.Div.), certif. denied, 57 N.J. 125, 270 A.2d 28 (1970), cert. denied, 401 U.S. 911, 91 S.Ct. 876, 27 L.Ed.2d 810 (1971). This doctrine reflects the strong legislative policy favoring land use planning by ordinance rather than by variance. Feiler v. Fort Lee Bd. of Adj., 240 N.J. Super. 250, 255-56, 573 A.2d 175 (App.Div. 1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991).
Nonetheless, the propriety of granting a variance depends on the facts in each case. O'Donnell v. Koch, 197 N.J. Super. 134, 138, 484 A.2d 334 (App.Div. 1984); Bove v. Emerson Bd. of Adj., 100 N.J. Super. 95, 241 A.2d 252 (App.Div. 1968); Suesserman v. Newark Bd. of Adj., 61 N.J. Super. 28, 160 A.2d 143 (App.Div. 1960); Mocco v. Job, 56 N.J. Super. 468, 153 A.2d 723 (App.Div. 1959). In granting or denying a variance, a zoning board *127 exercises a function which the Zoning Act commits to its sound discretion and experienced judgment. Bierce v. Gross, 47 N.J. Super. 148, 135 A.2d 561 (App.Div. 1957); Cummins v. Leonia Bd. of Adj., 39 N.J. Super. 452, 121 A.2d 405 (App.Div.), certif. denied, 21 N.J. 550, 122 A.2d 672 (1956); Robinson v. Cape May Bd. of Adj., 131 N.J. Super. 236, 329 A.2d 351 (Law Div. 1974). The Board's decision on a variance is presumed valid, Miller v. Boonton Tp. Bd. of Adj., 67 N.J. Super. 460, 171 A.2d 8 (App.Div. 1961), and a court may not substitute its judgment for the Board's on factual findings unless the Board has abused its discretion and acted unreasonably, arbitrarily or capriciously. Burbridge v. Mine Hill Tp., 117 N.J. 376, 385, 568 A.2d 527 (1990); Davis Enterprises v. Karpf, 105 N.J. 476, 485, 523 A.2d 137 (1987); Rowatti v. Gonchar, 101 N.J. 46, 51-52, 500 A.2d 381 (1985); 165 Augusta St., Inc. v. Collins, 9 N.J. 259, 87 A.2d 889 (1952). This deference stems from a recognition that zoning board members have a peculiar knowledge of local conditions. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 212 A.2d 153 (1965).
The New Jersey Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -112, authorizes local zoning boards to grant a use variance where: (1) "special reasons" exist for the variance (the "positive criteria"); and (2) the variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purposes of the zone plan and zoning ordinance (the "negative criteria"). N.J.S.A. 40:55D-70(d); Cerdel Construction Co. v. East Hanover Tp., 86 N.J. 303, 307, 430 A.2d 925 (1981); Pieretti v. Mayor and Council of Bloomfield, 35 N.J. 382, 387, 173 A.2d 296 (1961); Nynex Mobile Communications Co. v. Hazlet Tp. Zoning Bd. of Adj., 276 N.J. Super. 598, 648 A.2d 724 (App.Div. 1994); Kali Bari Temple v. Readington Tp. Bd. of Adj., 271 N.J. Super. 241, 638 A.2d 839 (App.Div. 1994). The MLUL replaced the former Municipal Planning Act effective August 1, 1976, N.J.S.A. 40:55D-1, L. 1975, c. 291, § 1, and its provisions are mandatory. Pop Realty Corp. v. Springfield Tp. Bd. of Adj., 176 N.J. Super. 441, 423 A.2d 688 (Law Div. 1980).
*128 Certain educational or institutional uses are deemed "inherently beneficial" to society, and in such a case the applicant is deemed to have met the positive criteria of N.J.S.A. 40:55D-70(d). Sica v. Wall Tp. Bd. of Adj., 127 N.J. 152, 159-60, 603 A.2d 30 (1992); Nynex Mobile, supra, 276 N.J. Super. at 608, 648 A.2d 724. The rationale is that inherently beneficial uses establish the special reason of promoting the general welfare, N.J.S.A. 40:55D-2(a). The courts have found inherently beneficial proposed uses where the applicant seeks to construct: a private head-trauma facility, Sica, supra, 127 N.J. 152, 603 A.2d 30; quasi-public affordable housing, DeSimone v. Greater Englewood Hsg. Corp., 56 N.J. 428, 440, 267 A.2d 31 (1970), and Homes of Hope, Inc. v. Mt. Holly Tp. Zoning Bd., 236 N.J. Super. 584, 589, 566 A.2d 575 (Law Div. 1989); a private hospital for the emotionally disturbed in a residential zone, Kunzler v. Hoffman, 48 N.J. 277, 225 A.2d 321 (1966); a private school in a residential zone, Burton v. Town of Montclair, 40 N.J. 1, 190 A.2d 377 (1963); a facility to educate children, Andrews v. Ocean Tp. Bd. of Adj., 30 N.J. 245, 249, 152 A.2d 580 (1959); a senior-citizen congregate-care center, Jayber, Inc. v. Municipal Council, 238 N.J. Super. 165, 174-75, 569 A.2d 304 (App.Div.), certif. denied, 122 N.J. 142, 584 A.2d 214, 215 (1990); a commercial radio-transmission tower, Alpine Tower v. Mayor & Council, 231 N.J. Super. 239, 249, 555 A.2d 657 (App.Div. 1989); and a sewage treatment plant to serve a commercial trailer park, Wickatunk Village v. Marlboro Tp., 118 N.J. Super. 445, 452, 288 A.2d 308 (Law Div. 1972). Maxwell did not contend and the Board did not find that the proposed billboard use was inherently beneficial. Thus, Maxwell must establish at least one other "special reason" to fulfill N.J.S.A. 40:55D-70d's positive criteria.
The phrase "special reasons" has been broadly defined as any reason which promotes a purpose of land-use regulation as set forth in the MLUL at N.J.S.A. 40:55D-2.[3] That provision declares *129 that it is the intent and purpose of the MLUL to promote, provide or secure the public health, safety, morals and general welfare, such as by maintaining minimum standards of habitability, Southern Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp., 92 N.J. 158, 456 A.2d 390 (1983), or allowing a new, fire-proofed hotel to replace an old deteriorating one, Kramer, supra, 45 N.J. at 268, 212 A.2d 153; promoting safety from natural and man-made disasters; adequate light, air, and open space; appropriate population densities and environmental preservation; space in appropriate locations for various land uses; free flow of traffic without congestion or blight, see, e.g., O'Donnell, supra, 197 N.J. Super. at 141, 484 A.2d 334 (funeral home granted variance to build parking area because doing so would eliminate dangerous traffic conditions), contrast pre-MLUL Mansfield & Swett v. West Orange Tp., 120 N.J.L. 145, 198 A. 225 (Sup.Ct. 1938); a desirable visual environment, see, e.g., Kessler v. Bowker, 174 N.J. Super. 478, 417 A.2d 34 (App.Div. 1979), certif. denied, 85 N.J. 99, 425 A.2d 264 (1980), but see State v. Miller, 83 N.J. 402, 416 A.2d 821 (1980); conservation of historic sites; senior-citizen housing construction; lower costs of development and efficient use of land; use of renewable energy resources; and maximum practicable recycling. N.J.S.A. 44:55D-2(a)-(o).
Our Supreme Court has held unequivocally that the special-reasons requirement may also be satisfied by a showing of undue hardship in the form of economic inutility for permitted uses:
Although the Court in Kohl [v. Fair Lawn, 50 N.J. 268 [234 A.2d 385] (1967)] did not expressly acknowledge that proof of undue hardship  i.e., that the property is not reasonably adapted to a conforming use, Brandon v. Montclair [Bd. of Com'rs], [124 N.J.L. 135, 149, 11 A.2d 304 (Sup.Ct.), aff'd, 125 N.J.L. 367, 15 A.2d 598 (E. & A. 1940)]  would also satisfy the requirement of special reasons, we deem it self-evident that that ground for a use variance has been preserved.... In several cases subsequent to the 1948 amendments [to the former Municipal Planning Act], *130 undue hardship in the form of economic inutility has been acknowledged to constitute a special reason to support a use variance.
Medici, supra, 107 N.J. at 4 fn. 1, 17 n. 9, 526 A.2d 109 (overruling Henningsen v. Randolph Tp., 214 N.J. Super. 82, 518 A.2d 503 (App.Div. 1986), rev'd, 108 N.J. 175, 528 A.2d 7 (1987), and New Hope Baptist Church v. Sommerhalter, 214 N.J. Super. 363, 367, 519 A.2d 887 (App.Div. 1986)). Accord Burbridge, supra, 117 N.J. at 392-93, 568 A.2d 527; Terner v. Spyco, Inc., 226 N.J. Super. 532, 546, 545 A.2d 192 fn. 4 (App.Div. 1988); Pagano v. Edison Tp. Zoning Bd. of Adj., 257 N.J. Super. 382, 391, 608 A.2d 469 (Law Div. 1992) (reversing denial of variance). Accord Stolz v. Ellenstein, 7 N.J. 291, 295-96, 81 A.2d 476 (1951). The type and degree of economic hardship which gives rise to a special reason for a use variance has no definitive interpretation. The requisite hardship has been described as "whether the ... restriction, viewing the property in the setting of its environment, is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private property." Brandon, supra, 124 N.J.L. at 149, 11 A.2d 304. As we have noted, however, the exact boundaries within which a zoning board may consider economic inutility have not been clearly drawn. Henningsen, supra, 214 N.J. Super. at 90-94, 518 A.2d 503 (Dreier, P.J.A.D., concurring in pt. and dissenting in pt.).
The Law Division judge refused to approve this use variance which permits a billboard in the relatively small C-3 Marine Commercial Zone because no "legally cognizable reason [existed] for the variance grant." R-1 residential zones exist to the east, north and west of the property, about 600 feet away. The property presents no bulk or dimensional problems for development. The property exceeds the lot size requirement of 25,000 feet by more than three times and far exceeds the depth requirement. A substantial portion (25%) of the property, about 18,000 square feet, is upland, not wetland, and is capable of development. As noted, the purpose of the C-3 Marine Commercial Zone expressed in the master plan and the zoning ordinance is to "encourage water-oriented business development compatible with *131 the predominant residential nature of Absecon's waterways with sufficient controls." The permitted uses are "marine and marine service facilities and water-oriented service facilities."
Confronted with the claim that certain DEP CAFRA regulations had made the property very difficult or impossible to develop for permitted uses, the Board granted the use variance for a billboard. The Board accepted the theory that if State regulations make any utilization of the property quite unlikely or impossible, a "special reason" exists for grant of a use variance. The Law Division judge rejected what he perceived as an unprecedented contention and reversed the Board.
We need not decide the legal merits of the property owner's unique theory that economic hardship from State regulation alone may constitute a "special reason." We are satisfied that on this record the property owner has not satisfied its substantial burden of proof on the so-called positive and negative criteria. We are not persuaded that the property owner has shown that (1) the property indeed has been regulated into inutility by the State DEP and (2) the billboard variance does not substantially impair the existing zoning scheme.
No concrete proposal was ever presented to DEP or any other State agency for development of the property. And, of course, no waivers or exceptions from regulatory restraints were ever sought from the State for any proposed project. Nor was there any evidence that the property owner sought to negotiate with the adjacent property owner in an effort to mitigate the situation. See Harrington Glen, Inc. v. Leonia Mun. Bd. of Adj., 52 N.J. 22, 31, 243 A.2d 233 (1968) (undersized-lot case). The property owner apparently made no affirmative effort to develop the property except by applying for the (d) use variance. A use variance in this circumstance should be a matter of last resort, not facile convenience. Approval of a billboard use variance here would suggest justification for lining all closely-regulated wetlands adjacent to highways with billboards sanctioned by use variances.
*132 Another special reason alleged by the owner, that the billboard would provide "air, light and open space," thus enforcing optimum zoning and land planning goals, strikes us as pure bootstrapping. The owner also urged as a special reason that the billboard has a "minimal impact" on the adjacent residential area and the site was particularly suitable. This subjective view is not demonstrated adequately by this record.
Turning to the negative criteria, the 30-foot billboard with two 14' x 48' signs is not particularly compatible with water-oriented business and the predominately residential nature of the Absecon waterways. The highway aspect is not the sole focus in this case. The residential and waterway character of the uses adjacent to this small Marine Commercial Zone are specifically recognized by the controlling ordinance.
Maxwell points to language by this court, albeit dictum, which it claims tends to support the (d) variance. In Anfuso v. Seeley, 243 N.J. Super. 349, 579 A.2d 817 (App.Div. 1990), the Borough of Oceanport Board of Adjustment granted a use variance to permit the Seeleys to expand a prior nonconforming use, a marina, finding as special reasons that the marina was an inherently beneficial use and that the Seeleys would suffer economic hardship if the variance were not granted. Id. at 351, 369, 579 A.2d 817. Although we concluded the evidence did not support either of these special reasons, we sustained the Board's finding of a third special reason, namely, that the variance advanced State land use purposes by encouraging water-dependent uses of property adjacent to waterways. Id. at 369, 579 A.2d 817. Anfuso does not directly support Maxwell's position. Plaintiff Elco could not deny that the special-reason requirement may be satisfied by showing that a proposed use will advance a State land use purpose, whether set out in N.J.S.A. 40:55D-2 or elsewhere. And the Anfuso court did comment on the interplay between State land use and municipal zoning ordinances. While noting that State environmental policy was not intended to preempt municipal power to regulate land use, we did say in Anfuso: "we do not mean to *133 suggest that a municipality's power to regulate land use should be considered in a vacuum without reference to applicable federal and State statutes and regulations." Id. at 364, 579 A.2d 817. But plaintiff Elco quite properly distinguishes Anfuso on the ground that, "in the present case, unlike Anfuso, there is no strong state policy encouraging the development of billboards." This is true, and Maxwell never contended there was such a policy; the Board obviously could not find that a special reason existed. A billboard variance would further any such State policy. While the quoted language from Anfuso is consistent with Maxwell's argument that local boards should not be required to make its variance decisions in a vacuum, turning a blind eye to state regulations whose impact may be quite relevant to the existence of economic hardship, Anfuso does not help us here.
The fact remains that no State policy is advanced by planting billboards in wetlands. Anfuso, in the end, does not aid Maxwell's cause. We are not prepared to hold that municipalities should or must resort to mitigating the impact of State environmental regulation by yielding to and adopting these State regulatory edicts as "special reasons" for use variances in order to blunt claims of economic inutility only incidentally consequent upon local zoning. This would surely create a hodge-podge, patch-work solution. Thoughtful rezoning of areas implicated by pervasive State regulation may be a much better solution. Or perhaps, accommodation of the State policy to local concerns by State waivers or concessions would assist property owners. Or, even resort to inverse condemnation might occur. "Spotting" billboard and other use variances about the landscape is surely not the answer.
We conclude that the record demonstrates (1) no "special reason" known to our jurisprudence for the billboard variance and (2) no satisfaction of the negative criteria required by N.J.S.A. 40:55D-70(d). We affirm the judgment of the Law Division setting aside the grant of the use variance.
Affirmed.
NOTES
[1] Most sign cases are considered "c" variances since the signs sought to be built are usually only accessory structures. The exception is a situation, as here, where a property-owner seeks to construct signs on a vacant lot, generating publicity for an enterprise or use on other premises. Cox, New Jersey Zoning and Land Use Administration, § 7-5.2, comm. (k), 150 (1995 ed.).
[2] L. 1993, c. 190, § 26, approved July 19, 1993, provides, "This act shall take effect one year from the enactment date of this act [July 19, 1994], except that section 15, section 19 and section 20 [§§ 13:19-17, 52:18A-206 and 13:19-13.1] shall take effect immediately [July 19, 1993], ...."

The only provision of CAFRA II not to take effect by July 19, 1994 was section 25 [repealing § 13:19-13, which had created the Coastal Area Review Board and authorized it to hear appeals from the Commissioner of the DEP]. That provision has no relation to the subject matter of this appeal.
[3] Indeed, because "special reasons" were circumscribed by the general purposes of zoning set out in N.J.S.A. 40:55D-2's predecessor (R.S. 40:55-32), the special-reasons standard was saved from unconstitutional vagueness. Ward v. Scott, 11 N.J. 117, 125-27, 93 A.2d 385 (1952) (sharply divided Court reaffirmed dictum in Monmouth Lumber Co. v. Ocean Tp., 9 N.J. 64, 87 A.2d 9 (1952), that special reason could but need not be based on undue hardship).